2022 IL App (2d) 210136-U
No. 2-21-0136
Order filed October 18, 2022

**NOTICE:** This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

_____

IN THE

APPELLATE COURT OF ILLINOIS

SECOND DISTRICT
_____

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) ) ) | Appeal from the Circuit Court of Winnebago County. |
| Plaintiff-Appellee, | ) ) | |
| v. | ) ) | No. 06-CF-405 |
| RICHARD E. WANKE, | ) ) ) | Honorable Joseph G. McGraw, |
| Defendant-Appellant. | ) | Judge, Presiding. |

_____

JUSTICE BIRKETT delivered the judgment of the court.
Justices McLaren and Schostok concurred in the judgment.

**ORDER**

¶ 1    *Held*: Defendant's amended postconviction petition was properly dismissed because defendant forfeited the issues raised on appeal when he did not present them at a *Krankel* hearing.

¶ 2    Defendant, Richard E. Wanke, appeals the judgment of the circuit court of Winnebago County dismissing his postconviction petition pursuant to the State's motion to dismiss. On appeal, defendant contends that his trial counsel, Greg Clark, provided ineffective assistance. Specifically, defendant argues that Clark failed to call three witnesses to establish and bolster his alibi, and that Clark failed to impeach the State's eyewitness with his purported inability to

recognize defendant during chats between defendant and the witness while waiting for a hearing to commence. We determine that defendant has forfeited these claims and affirm.

¶ 3                                     I. BACKGROUND

¶ 4     We summarize the facts relevant to our disposition. On January 17, 2006, defendant attempted to steal a laptop computer from the office of Professor Robert McCauley at Rockford College (now Rockford University). Clark, a Winnebago County conflict counsel who had a longstanding attorney-client relationship with defendant, was appointed as defendant's trial counsel.

¶ 5     Clark tried to withdraw several times during the representation, citing difficulties in communicating with defendant and defendant withholding information as the reason. Specifically, on March 14, 2007, Clark attempted to withdraw, relating that defendant would not communicate with him. Defendant denied that he had difficulties in communicating with Clark, claiming only that they did not see eye to eye about how to defend the case. The trial court denied Clark's motion to withdraw, admonishing defendant that it was his obligation to cooperate with Clark in preparing his defense. The court further admonished that, if his refusal to communicate and cooperate with Clark compromised his defense, it was "all on [defendant]." On May 7, 2007, the State asked for a continuance which Clark joined, representing that defendant had been refusing to discuss and prepare his defense. Clark represented that defendant would not respond to correspondence and was, in Clark's view, intentionally avoiding him. Clark further stated that he believed that defendant was angling to create an ineffective assistance claim against him by his refusal to communicate and cooperate. Clark renewed his motion to withdraw. The court once again denied the motion to withdraw, but it stated that it was clear that defendant was not responding to Clark,

meeting with Clark, returning phone calls, or assisting in preparing his defense, like suggesting witnesses. The court stated that "the record will be very, very clear" that any deficiency in his defense would be attributable solely to defendant. We also note that, in conjunction with both attempts to withdraw, Clark represented that he had correspondence and other records to dispute the charges leveled by defendant that Clark was at fault for failing to communicate with defendant and to support Clark's claim that the communications difficulty was caused by defendant.

¶ 6    In addition to the concerns about defendant's conduct, Clark noted that, in July 2006, defendant had disclosed a single alibi witness to him and that neither defendant nor the witness had cooperated further. Defendant did not dispute Clark's account. On July 19, 2007, at what was scheduled to be the final pretrial conference, Clark asked for a continuance to procure the presence of Chavez and Kim Klein, defendant's sister—both of whom were to be alibi witnesses. This continuance discussed only Chavez and Klein, and defendant did not indicate that that any other alibi witnesses were needed but not subpoenaed or served. We note further that defendant repeatedly interjected in many of the pretrial hearings, especially when he believed information was being misrepresented to the court.

¶ 7    Eventually, in September 2007, the matter advanced to trial, and the jury returned a verdict of guilty of burglary (720 ILCS 5/19-1(a) (West 2006)) for his attempt to steal the laptop. Defendant was not, however, remanded into custody; Clark successfully argued that defendant was not a flight risk, and defendant remained free on bond until sentencing, even though he faced a mandatory prison sentence of 3-14 years based on his criminal history.

¶ 8    Clark filed a posttrial motion for a new trial and included a generic claim of ineffective assistance of counsel. Clark represented to the trial court that he had invited defendant to provide

him with a list of the various ways in which he believed Clark's representation had been deficient and had apprised defendant of the upcoming hearing on the posttrial motion. The court allowed defendant to present his claims of ineffective assistance, prompting defendant at least six times to relate "in what ways [defendant thought Clark] was ineffective." Defendant alleged that Clark had not subpoenaed his two trial witnesses for the sentencing hearing, which the court interpreted as a motion to continue the sentencing hearing. Defendant also alleged that Clark failed to adequately cross-examine the State's eyewitness, Barry Roncal, about inconsistencies between his trial testimony and his statements and testimony at pretrial hearings. Defendant further alleged that Clark failed to highlight the lack of physical evidence, such as fingerprints on McCauley's laptop over which McCauley and the thief struggled, or to highlight the lack of other extrinsic evidence, such as a contemporaneous 911 phone recording or transcript or contemporaneous descriptions of the assailant versus how defendant claimed he looked on that date. Defendant also alleged that Clark failed to present a motion *in limine* he drafted seeking to exclude any statements that Diane Chavez, his landlord and friend, had made to the prosecution based on claims that Chavez had been coerced and intimidated by the State's alleged threats to prosecute her for the incident. The trial court denied defendant's *pro se* claim of ineffective assistance, remarking that Clark had done a "wonderful job." The matter was eventually set for sentencing on February 8, 2008.

¶ 9    On February 6, 2008, as Clark was clearing snow from his driveway and sidewalk, defendant murdered him. See *People v. Wanke*, 2019 IL App (2d) 170373-U (*Wanke II*). In the burglary case, defendant was eventually sentenced to a 14-year term of imprisonment. Defendant appealed, arguing that the trial court erred in denying Clark's motions to withdraw and that his

sentence was excessive. We affirmed. *People v. Wanke*, No. 2-08-1031 (2010) (unpublished order under Illinois Supreme Court Rule 23) (*Wanke I*).

¶ 10 On June 11, 2012, defendant filed his *pro se* postconviction petition alleging that Clark provided ineffective assistance. The trial court advanced the petition to the second stage, and, on April 30, 2019, defendant's appointed counsel filed defendant's amended postconviction petition. In the amended postconviction petition, relevant to the issues defendant raises on appeal, defendant alleged that Clark was ineffective for failing to call three witnesses at trial who would have supported his alibi and for failing to impeach Roncal because defendant believed that Roncal did not recognize him in two interactions occurring before scheduled hearings in the trial court. Defendant included affidavits from himself and the three alibi witnesses to support the allegations.

¶ 11 The State moved to dismiss the amended postconviction petition, arguing that defendant had forfeited his claims of ineffective assistance of counsel by murdering Clark. Alternatively, the State argued that the claims were barred by the doctrine of *res judicata*, forfeiture, and that the claims related to trial strategy. On March 10, 2021, the trial court granted the State's motion to dismiss, and defendant timely appeals.

¶ 12                                    II. ANALYSIS

¶ 13 On appeal, defendant alleges that Clark provided ineffective assistance of counsel by failing to investigate and call three witnesses that defendant asserts would have helped to establish and bolster his alibi: Terry Klein, his mother, Mary Wanke, and his friend, Cornn. Defendant also argues that Clark provided ineffective assistance by failing to impeach Roncal over interactions with defendant that Clark allegedly witnessed in which Roncal, according to defendant, was unable to recognize defendant.

¶ 14        A. Postconviction Procedure and Review

¶ 15 Under the Post-Conviction Hearing Act (Act) (725 ILCS 5/122-1 *et seq.* (West 2020)), a convicted defendant may challenge his or her conviction on the basis that he or she suffered the deprivation of state or federal constitutional rights. *People v. Domagala*, 2013 IL 113688, ¶ 32. The Act sets forth a three-stage process: at the first stage, a defendant need only present the gist of a constitutional claim. At the second stage, a defendant's petition and its accompanying documentation must make a substantial showing of a constitutional deprivation. At the third stage, an evidentiary hearing on the claim is held. *Id.* ¶¶ 32-34.

¶ 16 When a petition is advanced to the second stage, the court may appoint counsel for an indigent defendant, and counsel may amend the postconviction petition as necessary. *People v. Cotto*, 2016 IL 119006, ¶ 27. The State may answer the petition, in which case, the proceedings are advanced to the third stage, or it may move to dismiss the petition. *People v. Andrews*, 403 Ill. App. 3d 654, 658 (2010). If the State moves to dismiss the petition at the second stage, such dismissal is warranted only when the allegations in the petition fail to make a substantial showing of a constitutional violation. *People v. Hall*, 217 Ill. 2d 324, 334 (2005). As in any other motion to dismiss, the trial court takes as true all allegations that are not positively rebutted by the record. *Id.*

¶ 17 The purpose of the postconviction process is to permit inquiry into constitutional issues arising from the original conviction and sentence that were not, and could not have been, raised and resolved on direct appeal. *People v. English*, 2013 IL 112890, ¶ 22. Issues raised and decided on direct appeal are precluded by *res judicata*, and issues that could have been raised on direct appeal, but were not, are forfeited. *Id.* A postconviction petition is subject to dismissal on grounds

of *res judicata* or forfeiture at both the first and second stages. *People v. Blair*, 215 Ill. 2d 427, 450-51 (2005). We review a second-stage dismissal *de novo*. *Hall*, 217 Ill. 2d at 334.

¶ 18                              B. Ineffective Assistance of Counsel

¶ 19    On appeal, defendant argues that Clark was ineffective in two ways. First, for failing to investigate and present three alibi witnesses. Specifically, defendant alleged that he communicated with Clark about the three witnesses before trial commenced, and Clark confessed to defendant that he "forgot" to contact the alibi witnesses and did not present them at trial. Second, for failing to impeach the State's eyewitness, Roncal. Specifically, defendant alleged that, on two occasions, Clark, as well as the prosecutor, observed Roncal chatting with defendant, and defendant alleged that he believed that Roncal did not recognize him.

¶ 20    As an initial matter, we note that the State askes us to find that defendant's murder of Clark should forfeit defendant's postconviction claims, analogizing to the doctrine of forfeiture by wrongdoing. See Ill. R. Evid. 804(b)(5) (eff. Jan. 1, 2011). In the argument on the State's motion to dismiss defendant's amended postconviction petition, the trial court refused to entertain the State's argument on forfeiture by wrongdoing because it would have pertained to the third stage evidentiary hearing, allowing Clark to speak through his records. While there may also be merit to the State's analogy on public policy grounds, we need not attempt to craft such a policy-based rationale because existing authority overwhelmingly supports our decision on forfeiture grounds. We therefore begin by considering our standard of review for claims of ineffective assistance of counsel.

¶ 21    At the second stage of a postconviction proceeding, a defendant must satisfy the familiar *Strickland* standard. *Strickland v. Washington*, 466 U.S. 668 (1984). A defendant must

demonstrate both that counsel's performance fell below an objective standard of reasonableness, and that the deficient performance prejudiced the defendant. *People v. Tate*, 2012 IL 112214, ¶ 19. This contrasts with the more lenient first-stage standard, in which a defendant need only show that counsel's performance was *arguably* deficient, and the defendant was *arguably* prejudiced as a result. *Id.* At the second stage in a postconviction proceeding, a defendant must demonstrate both elements of the *Strickland* test, and if the defendant fails to show either deficient performance or prejudice, the claim will fail. *People v. Edwards*, 195 Ill. 2d 142, 163 (2001).

¶ 22     As noted in our discussion of the standard of review applicable to postconviction claims, waiver and forfeiture apply to a defendant's claims that were not but could have been raised on direct appeal. *English*, 2013 IL 112890, ¶ 22. This is because a claim of ineffective assistance should be reviewed on direct appeal unless the record is insufficient to address the claim. *People v. Veach*, 2017 IL 120649, ¶ 46. Failure to raise an ineffective assistance claim on direct appeal runs the risk of procedurally defaulting a subsequent postconviction ineffective assistance claim. *Id.* ¶ 47. Where the claim is dependent upon facts not found in the record, procedural default will not preclude its consideration on collateral review. *Id.* Here, we are faced precisely with the question of whether defendant's postconviction claims are procedurally defaulted.

¶ 23     Below, following the entry of the guilty verdict, defendant complained that Clark had provided ineffective assistance during the trial. This resulted in a *Krankel* inquiry; on appeal, defendant's ineffective assistance claims could and should have been raised during the *Krankel* inquiry and his failure to do so results in forfeiture of the issues before us. *English*, 2013 IL 112890, ¶ 22.

¶ 24     The purpose of a *Krankel* inquiry is to allow the trial court to address the defendant's claim of ineffective assistance of trial counsel, thereby narrowing the issues to be addressed on appeal and subsequent proceedings. *People v. Roddis*, 2020 IL 124352, ¶ 34.  Under this procedure, the defendant need not file a written motion; he or she needs only to bring the claim of ineffective assistance to the trial court. *Id.* ¶ 35.  The court does not automatically appoint new counsel. *Id.* Instead, it examines the defendant's claim and, if the defendant's allegations show possible neglect of the case, new counsel should be appointed; if, however, the defendant's allegations lack merit or pertain only to matters of trial strategy, new counsel is unnecessary, and the court may deny the defendant's motion. *Id.* If new counsel is appointed, he or she will be able to investigate and flesh out the defendant's claim of ineffective assistance (*id.* ¶ 36), and this will allow the court to address the merits of the defendant's ineffective assistance allegations in their entirety (*id.* ¶ 61).  In other words, by following the *Krankel* procedures, the parties will develop a sufficient record to allow trial and reviewing courts to address the ineffective assistance claim. *Id.*

¶ 25     Even so, while a *Krankel* hearing presents a defendant with an opportunity to make a posttrial claim of ineffective assistance of counsel, the failure to raise a specific claim within the *Krankel* inquiry will not necessarily result in the forfeiture of the claim on appeal or in a postconviction petition. *People v. McGee*, 2021 IL App (2d) 190040, ¶ 41.  However, where the trial court in the original prosecution has given the defendant a full and complete opportunity to raise the specific claims of ineffective assistance, and the court has taken pains to allow the defendant the opportunity to air all the bases of his or her complaints that trial counsel provided ineffective assistance, the failure to raise claims that could, and should, have been raised in the *Krankel* context operates as a forfeiture in the postconviction proceeding. *People v. Johnson*, 2016

IL App (5th) 130554, ¶¶ 28-32.  With these principles in mind, we turn to defendant's posttrial

claim of ineffective assistance and the trial court's inquiry.

¶ 26    On October 12, 2007, Clark filed a posttrial motion for a new trial that included an

allegation that "the Defendant had ineffective assistance of counsel."  On November 5, 2007, the

matter was scheduled for sentencing, and before the commencement of the sentencing

proceedings, the trial court first addressed defendant's motion for a new trial.  Specifically, the

court addressed the issue of ineffective assistance of counsel in the following colloquy:

"THE COURT: Thank you.  We need to address No. 10.  It alleges ineffective

assistance of counsel.

MR. CLARK: Can I have a moment?  Judge, my client would like to address the

Court concerning his list of issues concerning ineffective assistance of counsel, and I am

telling him he should have communicated with me.  I corresponded with him twice since

our jury trial.

THE DEFENDANT: Oh.

THE COURT: [Defendant], I will let you speak because we are going to move this

along.  **Tell me in what ways you think Mr. Clark was ineffective**.

THE DEFENDANT: I don't know how someone cannot serve a subpoena or have

a subpoena served because somehow finding my house and finding my landlord, who lives

in the same house—and it was made part of my trial—and my sister's home seems difficult.

Warrants are either served at—or I'm sorry—subpoenas are either serve[d] the night before

the case is involved and then if the people can't get here on time.  In this instance I spoke

with my attorney right after the trial, right after the guilty verdict, and said I wanted my

sister and my landlord as witnesses here today. They have not been served to testify here. My landlord cannot get off work. She works for the State of Illinois, as the judge knows. She has taken probably two days off because of different parts of hearings and trial—and then two more days off for trial, and she just doesn't have personal days, vacations [*sic*] days, medical days, any other days to utilize, and a simple subpoena will allow her boss to give her the day off.

THE COURT: So are you asking the attorney to make a motion to continue the sentencing date?

THE DEFENDANT: Well, that's just the first thing, your Honor. I don't know how the address where I live can't [have] been utilized, the warrant or the subpoena can't be served in an adequate manner. All of it then is thrown back at me for being incommunicative, but I have been very clear those two witnesses are ones that I want here today.

THE COURT: So I will ask the question again, are you asking your attorney to continue the sentencing?

THE DEFENDANT: Yes.

THE COURT: Okay. Now, let's address the Motion for New Trial. I presided over the trial, I had the opportunity to listen to everything involved in the trial. **Tell me in what ways you believe Mr. Clark was ineffective**?

THE DEFENDANT: In the suppression hearing a big deal was made about the appearance and comings and goings of the person Mr. [Roncal] saw. Mrs. Zerouali [(a prosecutor)] asked whether the person he saw had glasses. Mr. Clark asked whether the

person had glasses. When all was said and done with that hearing Judge Prochaska found that there was enough evidence, but at the end of that chastised both of these attorneys for not exploring that one particular aspect given that everybody in the lineup had glasses. Then we get to trial and Mr. [Roncal] changes his testimony and says well now the person did have glasses. I would think just a question about well are they similar to the glasses that the person is wearing right now. Are they similar to the glasses that are in this photo of the suspect. Are they similar to any of the glasses of any of the other people, but no question on something that where Mr. [Roncal] changed dramatically his testimony was ever asked. Similarly, [Professor McCauley] changed his testimony that the suspect that he had seen now did not have a hat. You would think that the follow-up of that was because Mr. [Roncal] had said that he had a hat and a gray beard, that you would spend sometime [*sic*] on identification to see if they were actually seeing the same person, but no questions on, well, okay if he didn't have a hat what color was his hair. What—you know—what color were his eyes, what complexion did he have. He had dark clothes, dark this, dark that. You know, were they blue jeans or were they black leather coat. Given that this was all circumstantial and there's—only thing that everyone is deal [*sic*] with is identification you would think that there would [have] been some questions about identification, but there were very few. And then at the suppression hearing the biggest point that the prosecution made was that hey look he looked [*sic*] at the van as it sped away, he saw a license plate with this number, he called in, they dispatch—or they called 911. We don't have a 911 transcript. We don't have a 911 call that was made. We have requested certain documents that I have personally seen when I was taken out

of the Court Room and arrested for this case that have never shown up from the prosecution, from the—from the police.

When I was arrested my attorney came down to speak with me, I ran through what I thought happened. This was obviously pulling together six weeks of memory because I was arrested out of Court six weeks or so after the commission of whoever did this crime. The jury didn't hear anything like that. They certainly heard Officer [unintelligible] say that I was arrested for a traffic stop, I mean you warned him against it but, you know, but it was still said, but nothing was said about, you know, more than 45 days later—I understand the whole concept of not saying that I was taken out of court, but the point that somehow the people who serve subpoenas and the detectives that go pickup suspects have that same problem of being able to find my house, even though they were able to find my house, even though they were able to use my drivers license as identification. Nowhere in there in testimony [*sic*] before this Court or before the jury was there anything about them tracking down a suspect to their home, finding gloves and leather coats and hats and computers and, you know, all of that sort of stuff, and my attorney didn't at least point that out that these things weren't found. The prosecution did a great job of pointing out what they did not have. We don't have any fingerprints, we don't have any forensic evidence. Supposedly somebody wrestled with Robert McCauley, but no hair and fibers were found, but you would think that because the prosecution said it my

attorney doesn't have to necessarily say that. Him and I have battled over how to present this case, and I am not saying he did a horrible job, he just left out a tremendous amount of stuff where there's opportunity to question whether the prosecution has a case. When the prosecution questioned, of all people, my sister whether I am employed or not, but didn't question me, my attorney didn't come back and at least sew up that loose end of whether I was or wasn't employed. I was employed. I still am employed by Miss Chavez, but the jury is given the impression I am an unemployed person.

Mr. Roncal has three versions of the confrontation with the suspect that he saw drive away from Rockford College campus. The first one he zoomed in front blocking off the van jumping out of his car—at least this is what the police report says—blocking the car and nearly getting run over by the get-a-away [*sic*]. Okay. That was not brought up to the jury. When we had the suppression hearing[,] no [Roncal] patiently came up to parallel[,] crossed in front of the car, was eight to ten feet away from the suspect and made a viewing of, you know, seconds. When we got to trial[,] he pulled up parallel went behind the van and went between the two vehicles—or went behind his security car or whatever—went between the two vehicles and stood fifteen seconds—well, at first he said thirty seconds—but fifteen seconds staring at the person in front of him. Mr. Clark did a great job of saying well wait a minute you said this in previous hearing, you are saying this now, but

what about the very spectacular police work that he claims in the police report where he pulled up, blocked the vehicle from proceeding anywhere, the person pulled back and nearly ran him over? That's three different version of one account. Now hand-in-hand, if we take—

MS. ZEROUALI [(Prosecutor)]: Judge, I am just going to object at this point. I am not sure if we are crossing over into the Motion for New Trial itself or if we are just on the other portions of the Motion or if we are just dealing with the ineffective assistance of counsel issue at this point. I think that [defendant] is addressing some of the other matters.

THE COURT: Well, **I am going to allow you to continue to address only the ineffective assistance of counsel**.

THE DEFENDANT: I am trying. When I approached [Clark]—[Clark] and I got along famously until we came to trial.

MR. CLARK: Your Honor, I am going to have to object to some of this, the generalness of this. You know, I am not going to tolerate much more of this, frankly.

THE COURT: **Tell me what you think was ineffective**. **I sat through the trial, tell me in what other ways you think he was ineffective**.

MR. CLARK: I mean, your Honor, I am handicapped in that I have attorney/client privilege that's not been waived, and this stuff is going in on a record for the Court's review and, you know, this is almost intolerable, that I am still

appointed to represent him, he is making these general allegations, and I have rebuttal to all of it, but not at this point in time am I going to present it, and I am not sure we are being very productive at this point.

THE COURT: [Defendant]?

MR. CLARK: I also advised [defendant] that his representations—**I invited him to give me a list of this**. He has had an opportunity to review the Motion containing the allegation, and there's been no communication with my office since the trial.

THE COURT: All right. I sat through the trial. **If there isn't anything else that you can point to specifically in what ways Mr. Clark was ineffective I am prepared to rule**.

THE DEFENDANT: Well, I would like to submit this Motion[1] that I tried to submit to you. My attorney has got it. I guess the biggest one is he withheld evidence from you, the Court, and withheld evidence from Miss Zerouali, because I attempted to present this to Judge Prochaska and he wouldn't accept it unless my attorney presented it. My attorney would not present it. I asked him repeatedly. It was forgotten about, but the Court may remember the first thing—or the last thing right before the trial proceeded was the State wanted additional documents, or documents that we had not turned over. I am assuming this was the document that they were talking about, this Motion that I made up and tried to

---

[1]Defendant is referring to his *pro se* "motion on filing charges of witness tampering" that he tendered at an earlier hearing, but Clark refused to adopt it. Clark filed defendant's *pro se* motion as an exhibit to the *Krankel* hearing for the sake of creating a complete record.

present to Judge Prochaska stating that Miss Zerouali questioned my landlord [(Chavez)] inappropriately and threatened her, and I tried to have a hearing so that that evidence would either be not allowed into my trial on anything she, my landlord[,] said while speaking with Miss Zerouali in her office or whether it be ruled it's admissible and just go through the procedure of seeing whether it should be disallowed or allowed.

Now, they made a big deal about whether my sister and my landlord would talk to them. They made a big deal on who said what when. Miss Zerouali, I think if I remember correctly, stated on the record that you only told—I'm sorry, it was the other prosecutor said—you only told Miss Zerouali that you spoke to [defendant] once. Now you are changing your testimony. They used that information of the meeting in Miss Zerouali's office against my witness, against me, and my attorney having this document then did not present it and utilize it to say hey wait a minute my client wants this information disallowed. I didn't have the opportunity to quash that testimony or question that testimony, and my attorney definitely didn't revise my witness or come back and try to rebuild my witness after the prosecution basically said well wait a minute you told us once, you had communication with [defendant] once. Whereas my witness said that hey no I talked to him twice on that day. Now, that information seeping in without me being able to quash it or at least have it evaluated on whether it was a proper questioning by the prosecution of my witness—

Now, the other thing is Miss Chavez is listed as a Codefendant on the State's web site as well as the docket. Her name, unless I am reading it incorrectly, it's the State versus [defendant] and Diane Chavez. I got this off of—

THE COURT: You are really getting so far off. In what way—let's assume whatever you have there that's from this web site, the jury was never informed she was on trial, this was your trial, **how does that make Mr. Clark ineffective that somewhere there's a web site that shows up with Diane Chavez' name**? That was never disclosed to the jury.

THE DEFENDANT: I guess you have to read the Motion, your Honor.

THE COURT: I am prepare[d] to rule on your Motion for Ineffective Assistance of Counsel [which] is heard and denied. I sat through the trial and Mr. Clark did a wonderful job, as far as the Court is concerned in representing you. In applying the *Montgomery* [*sic*] standard you don't even meet the first prong, and that was that his representation of you fell below a reasonable standard of care, and that simply didn't happen. We don't even have to get to prong two, that but for—did I say *Montgomery*, I meant *Strickland*. I don't know. If I said *Montgomery* I misspoke, it's under *Strickland*—your Motion fails in that you can't meet prong number one. This Court sat through the trial, heard the testimony, saw Mr. Clark cross-examine the State's witnesses, present your case and argue closing and opening, and there is no basis for an ineffective assistance of counsel argument."

¶ 27    In addition, following defendant's subsequent murder of Clark and the unsuccessful appointment of several attorneys, attorney Glenn Jazwiec was eventually appointed to represent defendant. At a February 29, 2008, hearing, the trial court apprised Jazwiec of its expectations. Specifically, the court proposed to set the matter for a sentencing date sufficiently removed to allow "[Jazwiec] to communicate with [defendant], review the trial file, review the post-trial motions that have already been heard, determine if they're sufficient or adequate, whether or not

you wish to supplement [them]." Following this hearing, Jazwiec filed motions to change venue, motions for substitution of judge and for the trial court to recuse, and motions to reinstate defendant's bond. He did not, significantly, seek to supplement or amend the posttrial motion, particularly with defendant's appellate contentions of Clark's ineffective assistance.[2]

¶ 28    The point of a *Krankel* hearing is to investigate a defendant's allegations of counsel's ineffective assistance and to determine if the defendant has shown, among other things, possible neglect of the case. *Roddis*, 2020 IL 124352, ¶ 35. Indeed, the *Krankel* process proceeds in two distinct steps: in the first step, the trial court determines whether there is a factual basis supporting the defendant's allegations of potential neglect by trial counsel with new counsel being appointed if potential neglect is shown. In the second step, an adversarial evidentiary hearing is held on the defendant's claims. *People v. Downs*, 2017 IL App (2d) 121156-C, ¶ 43. Here, we are concerned

---

[2]We note that defendant disputes that the trial court's appointment of Jazwiec included within its scope revisiting the posttrial motion. However, defendant does not appear to have considered the effect of the trial court's actual words at Jazwiec's appointment. Moreover, the citation to the record offered to support the contention does not even remotely support the contention that "neither Jazwiec nor the [trial court] considered the renewal of the motion for new trial to be within the scope of [Jazwiec's] appointment." Additionally, in defendant's affidavit in support of his amended postconviction petition, defendant avers that Jazwiec told defendant that he would, among other things, "reopen the ineffectiveness hearing, ask for a new trial." Defendant therefore demonstrates, during Jazwiec's representation, that he had more ineffective assistance claims to present, yet he neither broached the matter in court nor claimed Jazwiec to be ineffective.

with the adequacy of the first stage *Krankel* hearing regarding whether it provided an adequate exploration of defendant's *pro se* claims of Clark's ineffective assistance during his representation at trial and posttrial.

¶ 29      In making this evaluation, we note that our supreme court has provided guidance about how the trial court should conduct a first stage *Krankel* hearing.  The court is expected to discuss the allegations with defendant and trial counsel, to rely on its knowledge of trial counsel's performance at trial, and to consider the facial adequacy or inadequacy of the ineffective assistance claims.  *People v. Moore*, 207 Ill. 2d 68, 78-79 (2003).  Finally, the " 'trial court must conduct an adequate inquiry *** , that is, inquiry sufficient to determine the factual basis of the claim.' " *People v. Ayres*, 2017 IL 1200071, ¶ 11 (quoting *People v. Banks*, 237 Ill. 2d 154, 213 (2010)). With these principles in mind, we turn to the *Krankel* hearing in this matter.

¶ 30      We first note that the record shows that Clark included a generic claim of ineffective assistance in defendant's posttrial motion.  Additionally, Clark represented to the trial court that he invited defendant to prepare a list of the instances he believed Clark had provided ineffective assistance.  Defendant does not appear to have responded to Clark's invitation, and there appears to have been no further communication between Clark and defendant following the end of the trial. Instead, at the hearing, defendant embarked on an oral presentation of his claims.

¶ 31      The record also demonstrates that the trial court was fully cognizant of its duty in a *Krankel* inquiry.  The court prompted defendant no less than six times to relate "in what ways" defendant believed Clark "was ineffective."   Despite the court's prompting, defendant offered a disjointed, unorganized, and rambling account of his grievances about Clark's representation.

¶ 32    Specifically, defendant first complained that Clark had failed to subpoena his sister and Chavez to testify at the sentencing hearing.  The court interpreted this to be an oblique request for a continuance of the sentencing hearing.  Next, defendant complained that Roncal had not been adequately cross-examined based on the inconsistencies of his trial testimony with his previous statements and testimony.  Defendant also complained that Clark did not present or emphasize the lack of physical evidence, particularly regarding McCauley's stolen laptop.  Defendant also alleged that Clark had not presented a motion *in limine* he drafted challenging statements Chavez made to the prosecution based on claims that Chavez was coerced and intimidated by the threat of criminal prosecution against her.

¶ 33    The foregoing summary does not include rambling and off-topic discursions by defendant. In addition, we note that defendant's first complaint refers to the sentencing hearing (which had not yet occurred), not trial representation.  When defendant began discussing Clark's deficiencies, he discussed only the alleged inadequacy of Clark's cross-examination of Roncal which was premised on the inconsistencies between Roncal's reports (as campus security), his testimony in the motion to suppress, and his trial testimony.  On appeal, however, defendant claims that Clark failed to raise Roncal's inability to identify defendant based upon prehearing interactions between defendant and Roncal that Clark purportedly witnessed, interactions that defendant purportedly discussed with Clark as impeachment for Roncal's identification of defendant.  In other words, when defendant was given a full opportunity to raise any and all issues of ineffective assistance during the *Krankel* inquiry, defendant did not mention Roncal's purported inability to recognize him, and he only catalogued the alleged inconsistencies in Roncal's statements and testimony.

¶ 34    Similarly, the other issue raised in this appeal, the failure to present three alibi witnesses, was not mentioned despite the trial court imploring defendant to discuss "in what ways Mr. Clark was ineffective." Instead, defendant devoted the balance of his complaints to matters of strategy, like defendant's *pro se* witness-tampering motion *in limine* and the scope of Roncal's cross-examination, the lack of physical evidence tying defendant to the offense, as well as wandering into substantive matters supporting his request for a new trial.

¶ 35    The two issues defendant raises on appeal, that alibi witnesses were not called and Roncal's purported inability to recognize defendant during their pretrial interactions, were most assuredly known to defendant at the time of the *Krankel* hearing. Arguably, the failure to present alibi witnesses would have potentially shown that Clark had neglected the case; likewise, the failure to demonstrate Roncal's inability to recognize defendant during pretrial interactions could also have shown Clark's neglect, because it would have undermined Roncal's in-court identification of defendant. Had these points been raised during the *Krankel* hearing, the trial court, which very clearly understood its obligations in *Krankel* proceedings, likely would have appointed counsel to flesh out defendant's claims, and the record would have been made at that time. This process would have also resulted in an evidentiary hearing and the resolution of defendant's claims of ineffective assistance. *Roddis*, 2020 IL 124352, ¶¶ 34-36.

¶ 36    Thus, defendant had the opportunity to raise the ineffective assistance issues he now raises on appeal, as well as to create a complete record in support of those claims. We note that, significantly, defendant does not contend that the trial court's conduct of the *Krankel* inquiry, *i.e.*, its inquiry into the factual bases of his claims of ineffective assistance, was inadequate. Further, the trial court repeatedly directed defendant to present any and all ways in which defendant

believed that Clark provided ineffective assistance. Finally, the issues were obvious and known to him at the time of the initial *Krankel* hearing and Clark had instructed defendant to create a complete list of the instances he believed Clark to have provided ineffective assistance. We therefore hold that defendant could have, and should have, raised the issues of the alibi witnesses and Roncal's purported inability to identify him at the initial *Krankel* hearing. Therefore, defendant's failure to include these issues when he had the opportunity and forum to do so during the initial *Krankel* hearing, constitutes forfeiture. *English*, 2013 IL 112890, ¶ 22 (issues that could have been raised on direct appeal, but were not, are forfeited). Accordingly, we hold that the trial court properly dismissed defendant's postconviction petition.

¶ 37    Defendant tries to avoid the forfeiture of his ineffective assistance claims by contending that the affidavits in support of them were not created until after the direct appeal was concluded. This argument wholly misses the mark. The underlying issues were obviously known to defendant as soon as the trial concluded. Indeed, defendant was present in open court when Clark tendered and announced defendant's list of witnesses (and did not seek to complain that the three alibi witnesses were omitted). It is hard to fathom that the absence of the alibi witnesses went unnoticed and unremarked by defendant, and, were it the issue defendant makes out on appeal, he would have mentioned it in the *Krankel* hearing. Likewise, Clark's failure to inquire about Roncal's purported failure to recognize defendant could not have gone unnoticed by defendant during the trial. Defendant's claim that the affidavits he obtained in support of these claims could not have been added to the appellate record ignores both his knowledge of the claims dating back to the *Krankel* proceeding and the very purpose of that proceeding. Had defendant timely raised his claims of ineffective assistance at the *Krankel* proceeding, he would have been able to create the

same record that he did for the postconviction petition, or better, and we would have had the benefit of that complete record to resolve the ineffective assistance issues during his direct appeal. We therefore reject defendant's contention.

¶ 38   Defendant also insists that he was not given advance notice of the impending *Krankel* hearing. This claim is belied by the record. Clark represented to the trial court that he told defendant to prepare a list of the ways defendant believed Clark had rendered ineffective assistance. Defendant ignored this instruction. It is also telling that defendant admitted that he received at least one of Clark's letters that was sent to defendant following his conviction but before the parties appeared for the *Krankel* hearing. Defendant also did not dispute that he had not contacted Clark following the receipt of the letter. Finally, the letter defendant admitted receiving had information about the scheduled hearing at which defendant's ineffective assistance claims would be raised. Defendant wholly ignores this information in the record and does not explain how it squares with his assertion that he had no knowledge or notice of the impending *Krankel* hearing.

¶ 39   In similar fashion, defendant does not explain how his failure to raise what can only be described as obvious and known issues should be excused. Defendant characterizes his complaints during the *Krankel* hearing as "off the cuff," but ignores the information the record contains, namely, his admission that he received a letter from Clark apprising him of the upcoming hearing, and the failure to dispute any of Clark's representations about instructing him how to prepare for the upcoming hearing. In the face of this information in the record, defendant makes an unsupported assertion that he had no knowledge concerning the *Krankel* hearing and did not

explain why the contrary information in the record should not be considered or how it could be harmonized with his assertion. As such, we reject this contention.

¶ 40 We are left, then, with defendant's unexplained failure to raise what can only be characterized as obvious and well-known issues when asked to by the trial court. This results in the forfeiture of the issues for failing to raise them at the *Krankel* hearing.

¶ 41 Defendant argues that forfeiture should be relaxed when a *pro se* defendant is questioned during a *Krankel* proceeding because that defendant is usually speaking "off the cuff in response to the judge's questions." According to defendant, there is authority to invoke forfeiture where the defendant is represented by new counsel in the *Krankel* proceeding and the issue is not raised during the proceeding. See *People v. Fretch*, 2017 IL App (2d) 151107, ¶ 136 (new counsel forfeited a posttrial claim of ineffective assistance of trial counsel by failing to raise it during the consideration of the posttrial motion). However, defendant contends that an extension of this principal is unwarranted and unsupported. We disagree.

¶ 42 In the first instance, we disagree that that there is a principle that limits forfeiture or procedural default to the situation in which new counsel, and only new counsel, presents a posttrial claim of ineffective assistance. While *Fretch* encompasses this factual scenario, in which new counsel presents posttrial claims of ineffective assistance of trial counsel during the hearing on the posttrial motion (*id.*), we note that, generally, *pro se* defendants are held to the same standards required of attorneys, and procedural rules are not relaxed for *pro se* defendants. *People v. Vilces*, 321 Ill. App. 3d 937, 940 (2001). Moreover, in *Johnson*, 2016 IL App (5th) 130554, ¶¶ 28-32, the defendant failed to raise readily apparent issues in his *pro se* presentation during a *Krankel* hearing. The trial court there spent a substantial amount of the hearing discussing the defendant's

allegations. The appellate court, considering the defendant's subsequent postconviction petition, determined that the failure to mention the claims during the *Krankel* hearing subjected those claims to forfeiture. *Id.* Defendant does not consider *Johnson* or the effect of the general rule holding *pro se* litigants to the same standard expected of attorneys, instead proposing his own rule of lenity that is, itself, unsupported in reasoned and considered authority. Accordingly, we reject defendant's invitation to craft a new rule applicable to the *Krankel* framework and adhere to well-established principles. See *id.* (where the trial court thoroughly and fully considers a *pro se* defendant's posttrial claims of ineffective assistance of trial counsel, claims not raised during the *Krankel* proceeding will be subject to forfeiture in a subsequent postconviction petition).

¶ 43    Here, as discussed above, defendant received a thorough *Krankel* hearing, and the trial court repeatedly requested defendant to present any way he believed Clark's representation to have constituted ineffective assistance. Defendant cannot maintain that Clark's failure to call three witnesses to bolster defendant's alibi was somehow unknown to defendant at the time of the *Krankel* inquiry. His failure, therefore, to include this issue in his presentation results in forfeiture. Likewise, defendant cannot maintain that Clark's failure to impeach Roncal with his purported inability to recognize defendant was somehow unknown to defendant at the time of the *Krankel* inquiry. Defendant's failure to include the impeachment issue in his presentation during the *Krankel* inquiry results in its forfeiture.

¶ 44    We are also compelled to observe that defendant's issues are based, in broad strokes, on the same basic pattern of defendant informing Clark about the issue, and Clark forgetting or neglecting to present the issue at trial. We find this broad-stroke pattern to be problematic. First, the record is replete with the trial court's observations that defendant was refusing to communicate

and withholding information from Clark. Indeed, we commented on this in defendant's direct appeal:

"The trial court expressly determined, repeatedly, that defendant was manipulating the communications between himself and Clark. On March 14, 2007, the trial court, after Clark had argued to be allowed to withdraw, noted that defendant was not cooperating with his attorney and that he was acting at his own peril. On May 7, 2007, the trial court again noted that there was apparently little cooperation between defendant and Clark and admonished defendant to cooperate. The court also noted that, with respect to the difficulties in communication, 'It's all on you. Every bit of it is on you.' We have carefully reviewed the record and we conclude that the trial court's determination that defendant was at fault for the problems in communications between himself and Clark is not against the manifest weight of the evidence. See *People v. Johnson*, 237 Ill. 2d 81, 88 (2010) (deference is given to the trial court's factual findings, and those findings will be disturbed only if they are against the manifest weight of the evidence); *Hensley Construction LLC v. Pulte Home Corp.*, 399 Ill. App. 3d 184, 190 (2010) (reviewing court's role 'regarding the trial court's factual findings is limited to determining whether they are against the manifest weight of the evidence).

Defendant's refusal to cooperate and communicate with Clark is significant. It means that any prejudice experienced by defendant as a result of the communication difficulty is entirely of his own making. In *People v. West*, 137 Ill. 2d 558, 576 (1990), the defendant complained to the trial court that there had been a breakdown of communication with the court-appointed public defender. The public defender, however, informed the trial

court that the breakdown in communication was wholly unilateral—the attorney could communicate with the defendant, but the defendant could not or would not communicate with the attorney. [*Id.*] After the trial, the defendant raised an ineffective-assistance-of-counsel claim based, in part, on the lack of communication with the public defender. Our supreme court denied the claim, holding that there was 'nothing of record that would indicate [that the] defendant was inadequately represented' by the public defender 'or that he was unable to cooperate and communicate with' the public defender despite the claim that communication had broken down. [*Id.*] at 588. Likewise here. Where defendant is responsible for the breakdown in communication, we will not credit defendant's claim of error stemming from that breakdown in communication. See [*id.*]; see also *People v. Clarke*, 391 Ill. App. 3d 596, 622 (2009) (the defendant 'cannot benefit from a claim of error that he injected' into the case).

Here, defendant claims that the trial court's denial of Clark's motion to withdraw resulted in prejudice to him because he was unable to communicate with Clark and prepare his defense at trial. However, because the trial court's factual determination that it was defendant alone who caused the breakdown in communication (and this conclusion was not against the manifest weight of the evidence), we hold that defendant's own actions vitiate his claim of error. As a further reason in support of our decision, we note that it would be well beyond problematic to allow defendant's claim on this record as a matter of public policy. To allow the claim would give a defendant *carte blanche* to stonewall his own attorney, confident that by doing so, he would create reversible error and receive a new trial. Indeed, a defendant could repeat his actions until he received an acquittal. It

would be unwise in the extreme to allow a defendant to manufacture error and to reward intolerable behavior." *Wanke I*, No. 2-08-1031, slip op. at 28-29.

¶ 45    Our comments fully illustrate the problematic nature of defendant's conduct while Clark represented him. Because defendant's claims on appeal before us now follow the broad-stroke pattern of "I told Clark information, and he ignored it," they are based on a breakdown of communication between defendant and Clark. However, because the breakdown in communication is solely upon defendant and attributable to defendant's conduct, based on the record and the trial court's factual findings of record (which, we note, continue to be not against the manifest weight of the evidence), we conclude that the error, and any accruing prejudice is attributable to defendant. As a result, even if we accepted that defendant's claims on appeal showed that Clark had provided deficient representation, any prejudice would be attributable to defendant's actions, not Clark's. In other words, we would not, indeed, we could not, recognize the prejudice because defendant himself caused it. See *id.*

¶ 46    This conclusion is based on the record in this case, alone, and does not take into account defendant's murder of Clark. Indeed, if we consider the implications of defendant's murder of Clark, the broad-stroke view of defendant's claims on appeal becomes far more problematic. Therefore, based on the record in this case alone, defendant's claims are forfeited and any prejudice accruing from the alleged deficient conduct is attributable to defendant's own actions and, thus, is beyond our purview. Accordingly, on the record before us, there is no way that defendant could demonstrate cognizable prejudice because his own conduct (the breakdown of communication and stonewalling his attorney) caused any prejudice arising from the two issues of Clark's allegedly deficient performance raised on appeal.

¶ 47                                        III. CONCLUSION

¶ 48    For the foregoing reasons, we affirm the judgment of the circuit court Winnebago County.

¶ 49    Affirmed.