2025 IL App (1st) 231422-U

FOURTH DIVISION
May 29, 2025

No. 1-23-1422

NOTICE: This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).
_____

IN THE
APPELLATE COURT OF ILLINOIS
FIRST JUDICIAL DISTRICT

_____

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellee, | ) | Cook County. |
| | ) | |
| v. | ) | No. 19 CR 02484 |
| | ) | |
| ERIC LYNON, | ) | Honorable |
| | ) | Margaret Ogarek, |
| Defendant-Appellant. | ) | Judge Presiding. |

_____

JUSTICE LYLE delivered the judgment of the court.
Presiding Justice Rochford and Justice Ocasio concurred in the judgment.

ORDER

¶ 1    *Held*: The circuit court's decision to dismiss defendant's postconviction petition is affirmed where defendant's ineffective assistance of trial counsel claim is forfeited.

¶ 2    Following a jury trial, defendant-appellant Eric Lynon was found guilty of unlawful restraint, criminal sexual abuse, and aggravated criminal sexual abuse. He filed a successive postconviction petition, raising a claim of ineffective assistance of counsel. On appeal, Mr. Lynon argues that the circuit court erred in dismissing his petition at the first stage of proceedings. For the reasons that follow, we affirm the judgment of the circuit court.

¶ 3                                    BACKGROUND

¶ 4      Mr. Lynon was charged by indictment for criminal sexual abuse, aggravated sexual abuse, aggravated domestic battery, aggravated battery, and unlawful restraint as a result of an incident that occurred on January 11, 2019. The State extended a plea offer where Mr. Lynon would plead guilty to aggravated domestic battery and serve a 4-year sentence. The trial court gave Mr. Lynon *Curry* admonishments, to which he agreed he understood, and confirmed that he had consulted with his attorneys, wanted to reject the offer and proceed to jury trial.

¶ 5                                    A. Jury Trial

¶ 6      The victim, KBR, testified that she and Mr. Lynon had connected on a dating app in late December 2018, and met at a Sleep Inn Motel on January 11, 2019. The two had dinner and drank wine. At approximately 10 p.m., they laid down to sleep, and after a few minutes, KBR consented to Mr. Lynon rubbing and sucking on her breasts. Mr. Lynon put his hands between her legs, but she told him to stop because she was menstruating. He then turned her on her stomach, pulled her pants and underwear down below her buttocks, and rubbed his penis against her buttocks. She asked Mr. Lynon to get off her and he told her to "relax."

¶ 7      The two fell on the floor and KBR yelled for help. Mr. Lynon covered her mouth and nose with his hand and again told her to relax. He then let KBR off the floor and told her she was free to go but stood in front of the door. KBR continued to yell and pulled on the door handle. She exited the room, ran to the lobby, and asked the motel employees to call the police. When the officers arrived, KBR told them what happened. The officers then transported her to the hospital where medical personnel performed a rape kit. The next day, KBR went to the police department and identified Mr. Lynon in a photograph array as the person who sexually assaulted her.

¶ 8    The jury found Mr. Lynon guilty of unlawful restraint, criminal sexual abuse, and aggravated criminal sexual abuse. On April 29, 2022, the trial court merged the counts into the criminal sexual abuse count and sentenced him to 7 years' imprisonment.

¶ 9                    B. Preliminary *Krankel* Hearing

¶ 10    On June 10, 2022, Mr. Lynon filed a *pro se* "Motion for Reconsideration" which included allegations of ineffective assistance of counsel during the sentencing hearing. Mr. Lynon also sent a letter to the court on June 15, 2022, which contained additional allegations of ineffective assistance of counsel. Specifically, he made the following claims that defense counsel: (1) failed to consistently communicate with him; (2) refused his right to speedy trial; (3) failed to abide by his decisions; (4) failed to file pre-trial motions; (5) did not visit him while he was in custody; (6) was "intimidating" and dismissive of his concerns; (7) implied that he should be silent and if not, she would "bat[e] [him] into a conflict"; (8) never provided him with copies of charges or complaints or "anything concerning [his] case"; (9) told him that she did not have to prepare for trial; (10) failed to make more objections; (11) failed to present more evidence; (12) failed to effectively cross-examine; (13) gave a "half-hearted" failed attempt at a motion for new trial; (14) lied to him about plans to visit him in jail; and (15) filing a motion to reconsider sentence on his behalf despite him telling her he wanted to proceed *pro se*.

¶ 11    On September 23, 2022, the trial court conducted a preliminary inquiry pursuant to *People v. Krankel*, 102 Ill. 2d 181 (1984). The court asked Mr. Lynon to clarify and summarize his complaints about his trial counsel's representation he listed in his letter to the court. Mr. Lynon stated that his attorney did not communicate with him "over three and a half years about [his] case,

about the strategy of the case, her intentions or anything. [He was] in the dark about discovery, about a lot of things in [his] case, and [he felt] she fell short in terms of the communication."

¶ 12    The trial court questioned Mr. Lynon about how many times he was in contact with counsel. He stated that, while he was on bond, he had conversations by phone and on Zoom during COVID-19. Counsel responded that she had conversations in person as well as by phone and over Zoom with Mr. Lynon. She added that they discussed "the State had made an offer, if he wanted the offer, if he wanted the offer or if he wanted to proceed with trial. [Mr. Lynon] continued to state that he wanted a jury trial because he wanted to work on his appeal." She stated that she had explained to him what an appeal was and its process. She informed him that he would have to lose the jury trial to appeal, but "[h]e still wanted a jury trial."

¶ 13    The trial court allowed Mr. Lynon to explain his claims that trial counsel had failed to present exculpatory evidence such as a "failed sexual assault test and the body exam" and to present "inconsistent statements" from the victim. Trial counsel responded that she explained that the defense was consent, that the DNA evidence was challenged on cross examination, and she was unaware of "what other exculpatory evidence [Mr. Lynon] was talking about." At the conclusion of the hearing, the trial court determined that Mr. Lynon's allegations did not amount to ineffective assistance of counsel, and that a full *Krankel* hearing was not required.

¶ 14                            C. Direct Appeal

¶ 15    On direct appeal, this court affirmed Mr. Lynon's conviction, rejecting his claim of ineffective assistance of counsel due to his trial counsel's failure to object to portions of his videotaped statement where he agreed to take a polygraph test. *People v. Lynon*, No. 1-22-1573 (2024) (unpublished order under Illinois Supreme Court Rule 23).

¶ 16                           D. Post-Conviction Petition

¶ 17     Mr. Lynon filed a *pro se* postconviction petition arguing that he received ineffective assistance of counsel in that trial counsel: (1) improperly advised him of the potential sentencing range of the plea offer; (2) improperly advised him that he would not be convicted of aggravated criminal sexual abuse at trial because the State could not prove penetration; (3) failed to file a timely notice of appeal; (4) failed to argue the Mr. Lynon was not proven guilty beyond a reasonable doubt; (5) failed to demand speedy trial; (6) failed to raise a *Batson* issue during voir dire; (7) failed to file a motion to suppress and preclude the jury from learning about the enhancement from criminal sexual abuse to aggravated criminal sexual abuse; and (8) failed to object to modified jury instructions for criminal sex abuse. Mr. Lynon attached an affidavit in support of his petition swearing that:

> "During plea negotiations with the State, my trial counsel told me, albeit, incorrectly, that aggravated domestic battery was to be served at a rate of 50% (which the trial court, on the record corrected counsel and stated that aggravated domestic battery is to be served at a rate of 85%), and that he should reject the State's favorable plea offer because, he, [Mr. Lynon], could not be convicted of aggravated criminal sexual abuse because it would be impossible for the State to meet their burden of proof because there was no penetration of the victim and that the small amount of DNA that was recovered was not conclusive as to belonging to the petitioner only."

Mr. Lynon also swore that, had he been correctly informed of the sentence and the correct elements of the offense of aggravated criminal sexual abuse, he "likely would have accepted the State's favorable offer of four years imprisonment***instead of proceeding to trial and being convicted and serving almost twice the amount that the State had offered."

¶ 18     The trial court dismissed the petition on July 14, 2023, and filed a written order on July 21, 2023. In the order, the court addressed Mr. Lynon's plea negotiation claims related to the improper

sentencing range advice but did not specifically address his claim that he was erroneously advised to reject the plea offer. Mr. Lynon now appeals the court's order.

¶ 19                                ANALYSIS

¶ 20    We note that we have jurisdiction to consider this matter, as Mr. Lynon filed a timely notice of appeal. See Ill. S. Ct. R. 606 (eff. July 1, 2017); see also *People v. English*, 2023 IL 128077, ¶ 25.

¶ 21    Mr. Lynon argues that the trial court erred in its decision to dismiss his postconviction petition at the first stage of the proceedings. He contends that he established the gist of a constitutional claim that his trial counsel was ineffective for advising him against accepting a plea offer on the charge of aggravated domestic battery. Specifically, he claims trial counsel improperly advised him that the State could not meet their burden of proof at trial because they could not prove penetration.

¶ 22    The Postconviction Hearing Act (Act) (725 ILCS 5/122-1 *et seq.* (West 2022)) provides a statutory remedy for criminal defendants who claim a violation of their constitutional rights. *People v. Edwards*, 2012 IL 111711, ¶ 21. The Act provides a three-stage process for evaluating postconviction petitions. *People v. Shipp*, 2015 IL App (2d) 131309, ¶ 6. At the first stage, the trial court independently reviews the petition to determine whether the petition is frivolous or patently without merit. *People v. Tate*, 2012 IL 11214, ¶ 9. A petition may be summarily dismissed as frivolous or patently without merit only if the petition has no arguable basis in fact or law. *Id.* At this stage, unless positively rebutted by the record, all well-pled facts are taken as true, and the trial court's determination is reviewed *de novo*. *People v. Mongomery*, 327 Ill. App. 3d 180, 184 (2001).

¶ 23    The State argues that Mr. Lynon's claim of ineffective assistance of counsel was forfeited because he did not raise it at the preliminary *Krankel* inquiry. It contends that because Mr. Lynon did not raise the issue of deficient representation during the plea negotiations, we should find that his claim is forfeited. In the alternative, the State argues that Mr. Lynon cannot establish that he was prejudiced by his counsel's deficient performance. See *Strickland v. Washington*, 466 U.S. 668, 697 (1984). We will first address the issue of forfeiture.

¶ 24    The postconviction process allows defendants to raise constitutional issues arising from the original conviction and sentence that were not, and could not have been, raised and resolved on direct appeal. *People v. English*, 2013 IL 112890, ¶ 22. Issues raised and decided on direct appeal are barred by *res judicata*, and issues that could have been raised on direct appeal, but were not, are forfeited. *Id.* A postconviction petition is subject to dismissal on grounds of *res judicata* or forfeiture at the first stage. *People v. Blair*, 2015 Ill. 2d 427, 450-51 (2005).

¶ 25    The State insists that Mr. Lynon's claim is forfeited because he failed to raise it at the *Krankel* inquiry. Our supreme court has established that the purpose of a *Krankel* hearing is to allow the trial court to address a defendant's claim of ineffective assistance of trial counsel and to narrow the issues to be addressed on appeal and subsequent proceedings. *People v. Roddis*, 2020 IL 124352, ¶ 34. To initiate this inquiry, the defendant is not required to file a written motion; he need only bring a claim of ineffective assistance to the trial court. *Id.* ¶ 35. The court does not automatically appoint new counsel, but it examines the defendant's claim and, if the defendant's allegations show possible neglect of the case, new counsel is appointed. *Id.* However, if the defendant's allegations lack merit or pertain only to matters of trial strategy, new counsel is unnecessary, and the court may deny the defendant's motion. *Id.* In short, *Krankel* procedures

allow the parties to develop a sufficient record to allow trial and reviewing courts to address the ineffective assistance claim. *Id.*

¶ 26    While a *Krankel* hearing offers a defendant an opportunity to make a posttrial claim of ineffective assistance of counsel, the failure to raise a specific claim during the inquiry will not necessarily result in the forfeiture of the claim in a postconviction petition or on appeal. *People v. McGee*, 2021 2021 IL App (2d) 190040, ¶ 41. If the claim is dependent on facts not found in the record, the defendant's claim may avoid forfeiture. *People v. Thomas*, 38 Ill. 2d 321, 323 (1967). However, where the trial court in the original prosecution has given the defendant a full and complete opportunity to raise the specific claims of ineffective assistance, and the court has taken pains to allow the defendant the opportunity to air all the bases of his complaints that trial counsel provided ineffective assistance, the failure to raise claims that could, and should, have been raised in the *Krankel* context constitutes a forfeiture in the postconviction proceedings. *People v. Johnson*, 2016 IL App (5th) 130554, ¶¶ 28-32.

¶ 27    To support its argument, the State cites *People v. Wanke*, 2022 IL App (2d) 210136-U, as persuasive authority. In *Wanke*, the trial court dismissed defendant's postconviction petition at the second stage of proceedings. *Id.* ¶ 11. Defendant appealed the court's decision, arguing his trial counsel provided ineffective assistance. *Id.* ¶ 13. Following his trial, defendant filed a motion for new trial, raising a general claim of ineffective assistance. *Id.* ¶ 26. The court conducted a preliminary *Krankel* inquiry and asked defendant to list his claims in more detail. *Id.* ¶ 31. The reviewing court noted that at the *Krankel* hearing, defendant discussed the alleged inadequacy of his counsel's cross-examination of a witness, the witness' testimony in a motion to suppress, and the witness' trial testimony. *Id.* ¶ 33. Yet, on appeal, he claimed his counsel failed to impeach the

eyewitness' identification testimony based on prehearing interactions between defendant and the eyewitness that counsel purportedly witnessed. *Id.* The reviewing court determined that the underlying issues were known to defendant when trial concluded and defendant could have mentioned them in the *Krankel* hearing, thus forfeiting the claims. *Id.* ¶¶ 39-40.

¶ 28    In this case, we find Mr. Lynon forfeited his claim of ineffective assistance of counsel. Unlike the defendant in *Wanke*, Mr. Lynon drafted a list of his complaints against his trial counsel, which was filed with the trial court on June 15, 2022. Notably, Mr. Lynon's claim that counsel improperly advised him regarding the required elements the State needed to prove to sustain a conviction was not listed in the letter. The court conducted its *Krankel* hearing on September 23, 2022, giving Mr. Lynon an adequate amount of time to add additional claims if he found it necessary.

¶ 29    The court conducted extensive questioning regarding the claims contained in Mr. Lynon's letter. The issue of plea bargaining was addressed by counsel, who stated:

> "I asked [Mr. Lynon] what his wishes were if he wanted – at that time the State had made an offer, if he wanted the offer, or if he wanted to proceed with trial. He continued to state that he wanted a jury trial because he wanted to work on his appeal. I explained to him what an appeal was and how the process was. You would have to lose the jury trial in order to get the appeal. He still wanted a jury trial."

Mr. Lynon did not rebut his counsel's statement regarding plea negotiations, nor did he raise the issue when the court asked repeatedly if he had any additional issues to address. We also note that when the court asked Mr. Lynon about his claims regarding the evidence in the case, he did not mention evidence relating to penetration.

¶ 30    Though Mr. Lynon's claim is based on a fact outside the record, we believe he had an ample opportunity to raise it at the *Krankel* inquiry. His failure to raise the claim results in

forfeiture of the claim. See *Johnson*, 2016 IL App (5th) 130554, ¶¶ 28-32. As such, we affirm the trial court's decision to dismiss his postconviction petition.

¶ 31                                    CONCLUSION

¶ 32    For the foregoing reasons, we affirm the judgment of the circuit court, affirming the dismissal of Mr. Lynon's postconviction petition.

¶ 33    Affirmed.