2025 IL App (1st) 231672-U
No. 1-23-1672

SIXTH DIVISION
December 31, 2025

**NOTICE:** This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

_____

IN THE
APPELLATE COURT OF ILLINOIS
FIRST JUDICIAL DISTRICT

_____

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the Circuit Court |
| | ) | of Cook County, Illinois. |
| Plaintiff-Appellee, | ) | |
| | ) | |
| v. | ) | No. 06 CR 9303 |
| | ) | |
| TERRY ROGERS, | ) | |
| | ) | The Honorable |
| Defendant-Appellant. | ) | Neera L. Walsh, |
| | ) | Judge Presiding. |

_____

JUSTICE PUCINSKI delivered the judgment of the court.
Presiding Justice C.A. Walker concurred in the judgment.
Justice Gamrath dissented.

**ORDER**

¶ 1    *Held:* We reverse the second-stage dismissal of defendant's postconviction petition, as we find that defendant made a substantial showing that he received ineffective assistance of trial counsel for failing to investigate a potential witness. However, we do not find that the *pro se* petition set forth a claim of actual innocence, or that postconviction counsel rendered unreasonable assistance by failing to add an actual innocence claim. We remand for further proceedings, including an evidentiary hearing on the ineffective assistance claim.

¶ 2    Defendant Terry Rogers appeals the second-stage dismissal of his petition for postconviction relief filed under the Post-Conviction Hearing Act (Act) (725 ILCS 5/122-1 *et seq*. (West 2022)). On appeal, defendant contends that his *pro se* petition made a substantial showing

as to distinct claims of (1) ineffective assistance of trial counsel and (2) actual innocence, both supported by the affidavit of the same witness. For the following reasons, we reverse the dismissal of the petition's ineffective assistance of trial counsel claim and remand for further proceedings on that claim. We do not find that the *pro se* petition included a distinct claim of actual innocence. However, insofar as we find that remand is independently warranted for a hearing on the ineffective assistance claim premised on the same evidence, defendant may amend the petition to pursue such an actual innocence claim on remand.

¶ 3                                    I. BACKGROUND

¶ 4        Following a bench trial, defendant was found guilty of first degree murder for the shooting death of Lyntrell Heath and sentenced to 75 years' imprisonment. The facts of the case have been detailed in this court's order on direct appeal. See *People v. Rogers*, 2016 IL App (1st) 112816-U. Thus, we will only recount the facts necessary to resolve the issues on appeal.

¶ 5        At trial, Glenda Harris testified that she was a friend of Heath and was with him when he was shot on March 24, 2006. Earlier on that day, a friend of Heath's known as Duke had been shot.

¶ 6        Later, Harris was in a Jeep SUV driven by Heath heading south on Homan Avenue, when they saw a northbound vehicle with "some guys" that Heath wanted to talk to.[1] Heath tried to make a U-turn, but the driver of the other car turned and struck the back of the SUV. Harris recalled that "people started shooting." While Harris ducked down, Heath opened the passenger-side door, exited the vehicle and began running. Harris then heard more shots. Harris testified that she did not see Heath in possession of a gun that day.

---

[1] The vehicle driven by Heath is referred to at various points in the record as the "Jeep" or the "SUV." For consistency, we refer to it as the SUV.

¶ 7        Chicago Police officer David Santos testified that he and his partner came to the scene after hearing gunshots.  He observed the SUV in the middle of Homan Avenue, while another car backed away and traveled north. That car crashed and three black males ran from it. Officer Santos apprehended one of the men, Willie Kirkwood, while his partner sent a "flash message" on police radio about the other men.

¶ 8        Another police officer, Joseph Chausse, testified that in response to a radio call, he and his partner proceeded to an alley where they saw defendant attempting to summon a passing car. After the officers detained defendant, nearby they found a semi-automatic handgun, a black jacket, and what appeared to be a bulletproof vest. A police forensic investigator testified that the recovered firearm was a .40 caliber Smith  & Wesson.

¶ 9        Defendant was interviewed by detectives and Assistant State's Attorney Michael Clark while in custody on March 26, 2006; the interview was videotaped and transcribed. According to his custodial statement, defendant was not in either of the two vehicles involved in the collision but was in the "wrong place, wrong time." He stated he had been in another car with his sister Shamika, her boyfriend Richard, and their friend Jackie. Defendant recalled that he had exited that car to urinate when he saw another car crash into the SUV. People began shooting, and he saw people "jumping out with guns." When asked how many people exited the SUV, defendant answered "one guy got out." He also said that "two maybe three" guys exited the car that had struck the SUV. He said "It happened so fast," with "[p]eople running" and "guns firing." Defendant said he began "just shooting at everybody with guns" after bullets came "flying [his] way."

¶ 10        Defendant acknowledged he had been carrying a .40 caliber gun and a bulletproof vest, but stated this was only for protection, as there was a "price on [his] head."

He stated he "knew of" the persons involved in the shooting from the neighborhood, but he had "no argument" with any of them. He stated that he only took out his weapon after he heard shots. Although he acknowledged that he fired shots, he denied that he was shooting at any particular individual but was shooting "towards the whole thing."

¶ 11        In response to inquiries from defendant, ASA Michael Clark stated on videotape that he had spoken to defendant's sister, Shamika. Shamika indicated that she, her boyfriend Richard, and defendant were in Jackie's car when they saw an SUV pull over. Shamika recalled that another car cut off the SUV, after which people with guns emerged and began shooting at the SUV. Shamika said that defendant exited Jackie's car, but she did not see where he went or what was he was doing.

¶ 12        The parties stipulated that the assistant medical examiner who performed Heath's autopsy would testify that he had eight gunshot wounds, including in the back of the head and the left temple. Further, the parties stipulated that the medical examiner would testify that the cause of death was multiple gunshot wounds and the manner of death was homicide.

¶ 13        The State presented evidence that the Illinois State Police determined that a bullet jacket removed from Heath's body, as well as a bullet recovered from Heath's clothing, were fired from defendant's .40 caliber Smith & Wesson gun.

¶ 14        The State's evidence indicated that a total of 19 fired cartridge casings of three different calibers were recovered, including a number of .40 caliber casings that matched defendant's weapon. A forensic chemist with the Illinois State Police, Peter Brennan, testified that there were eight 9 millimeter Luger shell casings, four .22 caliber "long rifle" casings, and seven Smith and Wesson .40 caliber casings. All of the .40 caliber casings were fired from defendant's gun, but the

other casings could not be matched to a specific firearm. Brennan testified that "[d]efinitely three" weapons were involved in expending the casings recovered at the scene.

¶ 15    Defendant elected not to testify at trial.

¶ 16    In rendering its guilty verdict, the trial judge indicated it did not believe that defendant he was "minding his own business" when the shooting started, or that he fired in self-defense. The court said: "This is somewhat of a plan. I do not believe that this was a second degree [murder]."

¶ 17    After the verdict, defendant's trial counsel (both of whom were privately retained attorneys) filed a post-trial motion, which was denied. During the hearing on that motion, defendant informed the court that he had a *pro se* motion in which he alleged ineffective assistance of his trial counsel. The court continued defendant's *pro se* motion, after which defendant's trial counsel withdrew from the representation.

¶ 18    The court subsequently conducted a hearing at which it questioned both defendant and his trial attorneys regarding defendant's *pro se* allegations about his counsel's performance. Among other claims, defendant asserted that he had notified his trial counsel of four potential witnesses to support a self-defense claim (Shimeka Rogers, Richard Ivery, Jackie Montanez, and Melvin Delk), but his counsel failed to investigate or interview them. After questioning trial counsel about such claims, the court proceeded to deny the *pro se* motion. After new counsel was appointed to represent defendant, he was sentenced to 75 years' imprisonment.

¶ 19    On direct appeal, defendant challenged the sufficiency of the evidence of first degree murder; he alternatively argued that his conviction should be reduced to second degree murder because he acted upon an unreasonable belief that he was acting in self-defense. This court affirmed on direct appeal. *People v. Rogers*, 2016 IL App (1st) 112816-U.

¶ 20    On August 17, 2016, defendant filed a handwritten *pro se* postconviction petition, setting forth several claims in numbered paragraphs. Relevant to this appeal are the portions of the petition that referred to Frederick Washington. In paragraph 6, defendant averred that he was denied effective assistance of trial counsel because his trial attorneys "failed to interview and call as [a] witness Frederick Washington." He stated that Washington "would have contradicted the court[']s theory of a plan" and would testify "that victim initiating the altercation and opening fire on Petitioner first." Defendant claimed that he "told both of my attorneys about this witness and ask[ed] them to investigate the matter which they never did." "Because this witness would have testified and the testimony could have change[d] the outcome of my trial," he asserted that his trial counsel was ineffective.

¶ 21    Paragraph 7 of the defendant's petition stated: "Petitioner now has newly discovered evidence which contradicts courts [sic] theory of a plan. Testimony of witness Frederick Washington could have changed outcome of trial."

¶ 22    Both paragraphs 6 and 7 referenced Washington's affidavit, which was attached to the petition. In it, Washington stated:

> "I would testify that on 3-24-06 *** Lyntrell Heath and Glenda Harris and another guy named 'E' picked me up in a Black SUV at my girlfriend[s] house. Lyntrell ask[ed] me to ride with him. He said he was looking for some guys so he could holla at them. Because he thought they was involved in an earlier altercation w[h]ere one of his family members was shot. As we were riding around going north bound on Homan *** I noticed a car pulled over in the street and was talking to some guys on the east side of the street. *** Lyntrell

said that's them and pulled a gun from his waist area. Lyntrell then started shooting out of the window. Lyntrell made a U-turn and crash[ed]. Lyntrell got out the car shooting at the guys, th[e] the other guys started to sho[o]t back."

¶ 23    Washington further stated that Heath "shot first" and that defendant "was one of the guys Lyntrell Heath was shooting at" before defendant "started shooting back."

¶ 24    Washington's affidavit also stated: "I never came forward because I didn't want to get Involved. Cause I fear to get involved." The affidavit was sworn and notarized on June 16, 2016.

¶ 25    Defendant also attached his own affidavit in which he averred that he told his trial counsel that there were "other people present in the truck with the victim that had fled the scene." He told his attorneys that "one of these guys name possibly was Frederick Washington and they should investigate and interview this witness to possibly call to testify." However, his attorneys "never investigated or interviewed this witness after I gave them his name and told them he was a witness to the fact that the victim shot at me first."

¶ 26    In October 2016, the circuit court advanced the petition to second stage proceedings and appointed counsel from the Cook County Public Defender. A private attorney represented defendant from November 2017 to May 2019, after which that attorney withdrew and the Public Defender of Cook County was re-appointed.

¶ 27    From 2020 through 2022, appointed postconviction counsel filed numerous motions for continuance. In March 2023, postconviction counsel (Assistant Public Defender Ingrid Gill-Richards) filed a certificate pursuant to Supreme Court Rule 651(c). Ill. S. Ct. R. 651(c) (eff. July 1, 2017). Counsel averred that she had consulted with defendant by letter to ascertain his contentions, examined the record from his direct appeal (including his custodial statements),

reviewed this court's decision on direct appeal, and examined the *pro se* petition. Postconviction counsel concluded that the *pro se* petition "adequately presents his claim of a deprivation of his constitutional right[s], and a supplemental or amended petition is unnecessary."

¶ 28    In June 2023, the State filed a motion to dismiss the petition. The State argued that defendant had forfeited several claims, including his claim that trial counsel was ineffective with respect to Washington, because he did not include such claims in his *pro se* posttrial motion. Aside from forfeiture, the State argued that the ineffective assistance claim was meritless because defendant could not demonstrate prejudice from any failure to investigate Washington, as Washington's affidavit did not indicate that he was available to testify at defendant's trial.

¶ 29    The State's motion to dismiss did not make any argument as to whether the *pro se* petition purported to assert an actual innocence claim based on Washington's affidavit, independent of the ineffective assistance of counsel claim.

¶ 30    In a response filed by postconviction counsel, defendant pointed out that he did not have Washington's affidavit at the time of his *pro se* posttrial motion. He argued the court should "relax any procedural bars" in the interest of justice, as this claim of trial counsel's ineffectiveness regarding Washington involved "newly discovered evidence" and facts outside the record on direct appeal.

¶ 31    In the State's reply, it maintained that the claim related to Washington was forfeited. It suggested that defendant's reference to the affidavit as newly discovered evidence was an improper attempt to invoke an "actual innocence" argument. The State urged that defendant could not " 'boot-strap" an ineffectiveness of trial counsel claim into the guise of an actual innocence claim."

¶ 32    On August 16, 2023, the court heard argument on the State's motion to dismiss.

¶ 33        On September 16, 2023, the court issued an order granting the State's motion to dismiss. With respect to the claim that trial counsel failed to investigate or call Washington as a witness, the trial court found the issue had been "waived." The trial court pointed that his *pro se* post-trial motion asserted his trial counsel failed to call certain other witnesses, but defendant did not name Washington at that time as someone his counsel should have investigated. Because he did not raise this claim in his *pro se* motion or on direct appeal, it was "waived and cannot serve as a basis for post conviction relief."

¶ 34        The trial court further held that even if the claim was not procedurally barred, it would fail because Washington's affidavit "never indicated that he expressed a willingness to testify at petitioner's trial." The court noted that his affidavit stated that Washington did not come forward because he was afraid; the court found this "directly contradict[ed]" the petition's claim that Washington was willing to testify at trial. Thus, the trial court found that defendant failed to establish that trial counsel was ineffective for failing to call Washington.

¶ 35        The trial court's dismissal order did not make any mention of whether the *pro se* petition asserted an actual innocence claim, or whether any such claim potentially had merit.

¶ 36                                II. ANALYSIS

¶ 37        On appeal, defendant primarily argues that we should remand for a third-stage evidentiary hearing because he made a substantial showing that his trial counsel provided ineffective assistance in failing to investigate Washington. Separately, he argues that his petition and Washington's affidavit presented a distinct claim of actual innocence based on newly discovered evidence and that he made a substantial showing on this claim.

¶ 38        In the alternative to remanding for a third-stage hearing, he seeks reversal and remand for new second-stage proceedings because his postconviction counsel provided unreasonable

assistance by (1) erroneously believing his ineffective assistance claim was forfeited and (2) by failing to develop the *pro se* petition's "two sentence actual innocence claim" premised on Washington's affidavit.

¶ 39　　For the following reasons, we find the petition presented a substantial showing of ineffective assistance of trial counsel, such that a third-stage hearing is warranted on that claim. However, we do not find the petition contained a separate claim of actual innocence. Nor do we find that postconviction counsel rendered unreasonable assistance. We thus remand for further proceedings, including an evidentiary hearing on the ineffective assistance claim related to Washington. We note that defendant is not barred from amending the petition to raise additional claims.

¶ 40　　　　　　　　　　　　A. Post-Conviction Hearing Act

¶ 41　　The Act provides a three-stage mechanism by which defendants can challenge their convictions for violations of federal or state constitutional rights in collateral proceedings. 725 ILCS 5/122-1 *et seq*. (West 2016).

¶ 42　　If a postconviction petition is not dismissed at the first stage as frivolous or patently without merit, it advances to the second stage, where the State may either answer or move to dismiss it. *People v. Dupree*, 2018 IL 122307, ¶ 28; 725 ILCS 5/122-5 (West 2016). If the State moves to dismiss the petition, the circuit court may grant State's motion or advance the petition to the third stage for an evidentiary hearing. *Dupree*, 2018 IL 122307, ¶ 28. "A postconviction petitioner is entitled to an evidentiary hearing only when the allegations in the petition supported by 'affidavits, records or other evidence' (725 ILCS 5/122-2 (West 2014)) make a substantial showing of a deprivation of rights." *Id*.

¶ 43    At the second stage, the circuit court does not engage in any fact-finding or credibility determinations. *Id.* ¶ 29. The circuit court "examines a postconviction petition to determine its legal sufficiency and any allegations not affirmatively refuted by the record must be taken as true *Id.* ¶ 29. "[T]he substantial showing of a constitutional violation that must be made at the second stage is 'a measure of the legal sufficiency of the petition's well-pled allegations of a constitutional violation, which if proven at an evidentiary hearing, would entitle petitioner to relief.' " *Id.* (quoting *People v. Domagala*, 2013 IL 113688, ¶ 35.) *De novo* review applies when the trial court dismisses the petition at the second stage. *Id.*

¶ 44    With this standard in mind, we will first review defendant's arguments pertaining to the dismissal of the ineffective assistance claim, before turning to defendant's arguments pertaining to a potential actual innocence claim.

¶ 45                B. The Ineffective Assistance Claim Was Not Forfeited

¶ 46    In reviewing the dismissal of the ineffective assistance claim, we first assess the propriety of the trial court's conclusion that defendant "waived" his claim of ineffectiveness premised on trial counsel's failure to investigate or call Washington.

¶ 47    In asking that we affirm on the basis of forfeiture, the State points out that defendant did not mention Washington at the *Krankel* inquiry before the trial court. The State argues that defendant had a full opportunity to set forth all his claims of ineffective assistance at that point. The State also points out that defendant's affidavit in support of his petition indicates he identified Washington to his trial counsel before trial, insofar as he states he told counsel that Washington might be someone to "call to testify on my behalf." According to the State, this establishes that defendant had "everything he needed" to make this particular claim in his post-trial motion or on direct appeal. Thus, the State urges that the ineffective assistance claim at issue was forfeited,

despite the fact that Washington's affidavit was not yet in existence at the time of the *Krankel* inquiry.

¶ 48        We reject the State's reliance on forfeiture. We recognize that the goal of a *Krankel* proceeding "is to facilitate the trial court's full consideration of a defendant's *pro se* claims of ineffective assistance of trial counsel and thereby potentially limit issues on appeal." *People v. Jolly*, 2014 IL 117142, ¶ 29. However, we do not find support for the proposition that a *pro se* defendant must make every particular allegation of trial counsel's ineffectiveness at the hearing, or forfeit the right to bring any other claims of ineffectiveness in a subsequent postconviction petition.

¶ 49        Keeping in mind that Washington's affidavit was not executed until 2016, the case law simply does not mandate forfeiture under these circumstances. "In a postconviction proceeding, the common law doctrines of *res judicata* and forfeiture operate to bar the raising of claims that were or could have been adjudicated in a prior proceeding." *People v. Ayala*, 2022 IL App (1st) 192484, ¶ 106 (citing *People v. Blair*, 215 Ill. 2d 427, 43 (2005)). A defendant "must generally raise a constitutional claim alleging ineffective assistance of counsel on direct review or risk forfeiting the claim." *People v. Veach*, 2017 IL 120649, ¶ 47. "Procedural default does not, however, preclude a defendant from raising an issue on collateral review that depended upon facts not found in the record. *Id*.

¶ 50        Indeed, our supreme court has instructed that where the record is insufficient to assess a specific claim of trial counsel's effectiveness on direct appeal, that claim is properly brought in collateral proceedings. See *People v. Ligon*, 239 Ill. 2d 94, 105 (2010) ("where, as here, the record is insufficient because it has not been precisely developed for the object of litigating a specific claim of ineffectiveness raised in the circuit court, thereby not allowing both sides to have an

opportunity to present evidence thereon, such a claim should be brought on collateral review rather than on direct appeal.") This principle undermines the application of forfeiture to the instant claim, since Washington's June 2016 affidavit was not in existence either at the time of the *Krankel* motion or on direct appeal. See, e.g., *Ayala*, 2022 IL App (1st) 192484, ¶ 107 (forfeiture did not apply "because the facts relating to this claim [of trial counsel's conflict of interest] did not appear on the face of the original appellate record").

¶ 51        Moreover, the Second District court has held that a specific claim of ineffective assistance is not forfeited merely because the defendant did not include it in among other claims at a *Krankel* inquiry. See *People v. McGee*, 2021 IL App (2d) 190040. In *McGee*, the defendant's *pro se* submission stated that his appointed counsel should have gotten certain counts "dropped"; when the court asked him to elaborate, he indicated that the State's lack of evidence was such that certain counts "should have gotten dropped." *Id*. ¶ 13. Defendant agreed his counsel advocated for him "at the end" of the trial, but that he was referring to counsel's performance "way before." *Id*. When the court asked if there was anything else he felt counsel did not do for him, he said "Not really." *Id*.

¶ 52        On direct appeal, defendant raised a claim of ineffective assistance of counsel related to jury instructions. *Id*. ¶ 16. Defendant's subsequent *pro se* postconviction conviction petition included a claim that trial counsel pressured him not to accept two plea offers. See *id*. ¶¶ 17-18. The trial court dismissed that claim because "defendant failed to inform the court of that particular concern during the *Krankel* inquiry." *Id*. ¶ 25. In reversing and remanding for a third-stage hearing, the Second District rejected the "apparent forfeiture theory" relied upon by the trial court. *Id*. ¶ 41 (holding that "An omission or absence of an assertion at trial is not a positive rebuttal of an averment in a postconviction proceeding.").

¶ 53 We recognize but are not persuaded by the State's reliance on two Rule 23 orders for the proposition that failure to raise a specific claim during a *Krankel* hearing necessarily forfeits that claim in a subsequent postconviction proceeding. In *People v. Wanke,* 2022 IL App (2d), 210136-U, the court had conducted a *Krankel* hearing at which defendant had alleged his trial counsel's inadequacy in cross-examining one of the State's eyewitness, Roncal. In an amended postconviction petition, he newly alleged his counsel was ineffective by failing to call three alibi witnesses and by "failing to impeach Roncal because defendant believed that Roncal did not recognize him in two interactions occurring before scheduled hearings." *Id*. ¶ 10.

¶ 54 In affirming second-stage dismissal of the petition on the basis of forfeiture, the Second District reasoned these new claims were "most assuredly known to defendant at the time of the *Krankel* hearing," emphasizing that the trial court had repeatedly asked him during the hearing to articulate in what ways his trial counsel was deficient. *Id*. ¶ 35. Thus, "defendant had the opportunity to raise" these issues "as well as to create a complete record in support" of that claim. *Id*. ¶ 36. The Second District rejected defendant's suggestion that he could avoid forfeiture of the claims "by contending that the affidavits in support of them were not created until after the direct appeal," since the "underlying issues were obviously known to defendant as soon as the trial concluded." *Id*. ¶ 37.

¶ 55 Recently, a separate panel of the First District approvingly cited *Wanke* in finding forfeiture of a postconviction ineffectiveness claim on the basis that it could have been raised at the *Krankel* hearing. *People v. Lynon*, 2025 IL App (1st) 231422-U. In that case, following his guilty verdict, defendant submitted a letter to the trial court specifying fifteen separate claims of trial counsel's ineffectiveness, after which the court conducted a *Krankel* hearing but determined the allegations did not warrant further proceedings. *Id*. ¶ 14. After his direct appeal failed, defendant filed a

postconviction petition newly alleging his trial counsel's ineffectiveness in advising him about the State's plea offer. *Id.* ¶ 17. This court agreed with the State that this claim was forfeited, noting that this claim was not listed in defendant's letter to the court, he did not "rebut" his trial counsel's statements at the *Krankel* hearing regarding the State's plea offer, and he did not raise the issue "when the court asked repeatedly if he had any additional issues to address." *Id.* ¶¶ 28-29.

¶ 56        As noted at oral argument, our supreme court recently granted a petition for leave to appeal in *Lynon*. *People v. Lynon,* No. 132043 (PLA allowed Nov. 26, 2025). We await the supreme court's guidance on the forfeiture question. However, at this point, there is no binding authority compelling us to apply forfeiture. To the contrary, our supreme court has indicated that a collateral proceeding is the proper means for a defendant to raise an ineffectiveness claim where, as here, it relies on evidence unavailable at the time of direct appeal. See *Ligon*, 239 Ill. 2d at 105.

¶ 57        We decline to adopt the rigid approach to forfeiture that the State urges. We believe the Second District took the correct approach in *McGee*, 2021 IL App (2d) 190040. That is, we decline to find that defendant forfeited a claim premised on trial counsel's failure to investigate Washington, notwithstanding that he mentioned the failure to investigate other potential witnesses during the *Krankel* inquiry. In our view, it is simply too harsh to require defendants who have just been convicted—many of whom are young adults with little formal education—to specify each and every way in which they believe trial counsel was ineffective, or be forever barred from raising any subsequent postconviction claims about trial counsel's performance. Keeping in mind that defendants lack legal assistance at this stage, it is simply unduly burdensome to expect them to be aware of (let alone to articulate) every particular allegation of ineffective assistance at that point. See *Wood*, 2014 IL App (1st) 121408, ¶ 55 (rejecting suggestion that where a defendant raised some ineffective assistance claims in a *pro se* posttrial motion, he "forfeited all remaining

ineffective assistance claims" for purposes of direct appeal, as such a rule "would impose undue hardship on criminal defendants who believe they have received ineffective assistance but cannot afford to retain other counsel in connection with their posttrial motions and therefore must raise such claims *pro se*.").

¶ 58 At the very least, if such a strict forfeiture rule is to be enforced, fundamental fairness requires that the defendant must be first admonished accordingly at the *Krankel* hearing about the consequences of failing to raise a particular claim. Without such explicit guidance, we cannot presume that a *pro se* defendant at this stage will anticipate the harsh consequences of forfeiture, *i.e.*, that the *Krankel* hearing will be his *only* opportunity to set forth *all* of his claims regarding his trial counsel. Fairness dictates that a defendant in this position should be advised that (1) he is expected to articulate each and every way in which he believes that trial counsel was ineffective, and (2) he will thereafter be barred from raising new complaints about his trial counsel's performance on direct appeal or in collateral proceedings.

¶ 59 For the above reasons, we reject the State's forfeiture argument and the trial court's reliance thereon in its dismissal order. We will thus proceed to evaluate the merits of the claim of ineffective assistance premised on trial counsel's failure to investigate Washington.

¶ 60 C. Defendant Made a Substantial Showing of Ineffective Assistance

¶ 61 We turn to consider whether defendant's petition and supporting affidavits, taken as true, made a substantial showing of trial counsel's ineffectiveness based on their failure to investigate Washington. We keep in mind that this does not involve any fact-finding or credibility determinations. *Domagala*, 2013 IL 113688, ¶ 35. At this stage, "all-well pleaded facts that are not positively rebutted by the original record are to be taken as true." *Id.* (quoting *People v. Coleman*, 183 Ill. 2d 366, 385 (1998)).

¶ 62        "To prevail on a claim of ineffective assistance of counsel, a defendant must demonstrate that counsel's performance was deficient and that the deficient performance prejudiced the defendant." *Domagala*, 2013 IL 113688, ¶ 36 (citing *Strickland v. Washington*, 466 U.S. 668, 687 (1984)). This means that "counsel's performance was objectively unreasonable under prevailing professional norms and that there is a 'reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.' " *Id*. (quoting *Strickland*, 466 U.S. at 694)

¶ 63                    Defendant Meets the Deficient Performance Prong

¶ 64        As to the first prong, we find defendant's petition and supporting affidavits made a substantial showing that trial counsel was deficient in failing to investigate Washington.

¶ 65        Trial counsel has a "duty to conduct 'reasonable investigations or to make a reasonable decision that makes particular investigations unnecessary.' *Id*. ¶ 38 (quoting *Strickland*, 466 U.S. at 691). Counsel's duty "includes the obligation to independently investigate any possible defenses. [Citation.]" *Id*. "Lack of investigation is to be judged against a standard of reasonableness given all of the circumstances, applying a heavy measure of deference to counsel's judgments." (Internal quotation marks omitted.) *Id*. Where the record shows that "counsel had reason to know, from an objective standpoint, that a possible defense *** was available, failure to investigate fully can constitute ineffective assistance of counsel." *Id*.

¶ 66        Here, the petition and supporting affidavits (which we must take as true) allege that defendant informed his trial counsel that Washington was a potential witness who could testify that Heath was the person who fired first, yet counsel failed to investigate that witness. Plainly, such testimony would support a claim of self-defense, or at least support an argument for reduction of the offense from first degree murder to second degree murder. Thus, the petition and supporting

affidavits alleged that counsel had reason to know that Washington might be able to offer helpful testimony, but failed to investigate him. If true, that would be deficient performance.

¶ 67      In arguing that defendant cannot satisfy the deficient performance prong, the State emphasizes (as noted by the trial court) that Washington's affidavit did not explicitly state that he was willing to testify at the time of defendant's trial. The State also points out that Washington attested: "I never came forward because I didn't want to get involved. Cause I fear to get involved."

¶ 68      We fail to see how these facts preclude defendant from sufficiently alleging his counsel was deficient by at least failing to investigate Washington, after defendant notified counsel that he was a potentially helpful witness. Although Washington did not specifically state in his affidavit that he was willing to testify as of the time of defendant's trial in 2011, we do not see how that undermines that defendant had alleged that he notified his counsel about a potentially helpful witness, yet they failed to investigate him.

¶ 69      In any event, the State identifies no case law requiring that (to avoid dismissal at the second stage), the defendant must produce an affidavit in which the potential witness specifically and explicitly attests that he was available and willing testify at the time of trial. We also note that, here, defendant's petition averred that Washington "would have testified" that Heath fired shots first. This allegation must be taken as true if not rebutted by the record. We do not find it has been rebutted.

¶ 70      In this regard, we acknowledge the statements in Washington's affidavit that "I never came forward because I didn't want to get Involved. Cause I fear to get involved." The trial court apparently believed these statements established that Washington would not have testified on defendant's behalf, had he been approached by defense counsel. We disagree. These statements simply indicated why Washington did not come forward and offer testimony on his own initiative.

They do not necessarily indicate that he would have refused to testify, had defense counsel approached him and explained the significance of his testimony. Certainly, witnesses to a crime may be persuaded to testify, despite initial reluctance or fear. Thus, we do not view these statements as fatal to the claim that trial counsel was deficient in failing to investigate Washington.

¶ 71    The State otherwise argues that, given the other evidence in the case, counsel's decision not to investigate or call Washington was reasonable. The State's brief acknowledges that at this stage, it "must be taken as true" that defendant's trial attorneys failed to investigate after defendant informed them that Washington witnessed that Heath shot first. Yet, the State argues, "this does not mean that petitioner's trial counsel were required to sincerely believe in that account's veracity or in the strategic wisdom of further investigating it."

¶ 72    In essence, the State posits that it was reasonable for trial counsel to ignore defendant's request to investigate Washington, as the known evidence "eliminated any reasonable possibility in the minds of [trial counsel]" that "good reason existed" to investigate Washington. In defending the failure to investigate, the State suggests that Washington's testimony would conflict with statements defendant made in his recorded custodial statement, including his statement that he only saw "one guy g[e]t out" of Harris's car.

¶ 73    The State also argues at length that Washington's testimony would be inconsistent with the theory of the case advanced by defense counsel at trial—which was that defendant only fired in response to multiple other persons firing in the area, but that he was not aiming at anyone in particular. The State posits that trial counsel's chosen defense was "arguably even more sound" than a defense that hinged on evidence that Heath fired the first shots. In turn, the State suggests, it was reasonable for counsel to fail to investigate Washington.

¶ 74    We find the State's logic is flawed, insofar as it focuses on the content of trial counsel's argument at trial, while ignoring whether trial counsel made a reasonable investigation *before* trial. In short, the State suggests that because counsel ultimately elected to argue a slightly different defense theory at trial, there was no problem with counsel's failure to investigate whether Washington could testify that Heath was the initial shooter. As stated in defendant's reply brief, the State suggests that it was reasonable to "fail[] to investigate a known eyewitness, thus remaining ignorant of his testimony, because the defense theory counsel ultimately pursued did not happen to match" what Washington might have testified to.

¶ 75    We disagree with the State's position. Regardless of the theory *ultimately* advanced at trial, defense counsel has a duty to at least "investigate any possible defenses." *Domagala*, 2013 IL 113688, ¶ 38. As counsel never contacted Washington, they never learned what he might be willing to testify to. Indeed, it cannot be known whether counsel ultimately would have made the same argument it did at defendant's trial, had counsel duly investigated and then made a strategic decision about the value of Washington's potential testimony. Trial counsel's alleged failure to at least *investigate* whether Washington could provide helpful testimony is unreasonable, regardless of the argument ultimately made at trial.

¶ 76    We thus find that defendant made a substantial showing with respect to the first prong of the *Strickland* standard. To be clear, we are not finding that the argument actually advanced by trial counsel was unreasonable or deficient. Rather, we find that defendant's petition meets the deficient performance prong because (as alleged by the petition) counsel knew of but failed to investigate an eyewitness whose testimony could corroborate that Heath was the initial shooter.

¶ 77                    Defendant's Petition Satisfies the Prejudice Prong

¶ 78     This brings us to the question of whether the petition satisfied the prejudice prong of the *Strickland* inquiry. This requires a "reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Domagala*, 2013 IL 113688, ¶ 36 (quoting *Strickland*, 466 U.S. at 694). "[A] reasonable probability that the result would have been different is a probability sufficient to undermine confidence in the outcome." *People v. Evans*, 209 Ill. 2d 194, 220 (2004).

¶ 79     In making this assessment, we keep in mind that prejudice in this case does not necessarily require defendant to show that he would have been acquitted. That is, a conviction of second degree murder instead of first degree murder would also be a different result for purposes of the prejudice prong. See e.g. *People v. Brown*, 2014 IL App (4th) 120887 (on appeal from first-stage dismissal, finding defendant stated a gist of ineffective assistance claim where he alleged that, but for counsel's improper advice, he would have requested second degree murder instruction and could have been convicted of that crime instead of first degree murder).

¶ 80     Second degree murder is a lesser mitigated offense of first degree murder. *People v. Jeffries,* 164 Ill. 2d 104, 122 (1995). It "differs from first degree murder only in the presence of a mitigating factor, such as an alleged provocation or an unreasonable belief in justification." *People v. Flemming*, 2015 IL App (1st) 111925-B, ¶ 53. A person commits second degree murder when he commits first degree murder and "at the time of the killing he or she believes the circumstances to be such that, if they existed, would justify or exonerate the killing *** but his or her belief is unreasonable." 720 ILCS 5/9-2(a)(2) (West 2024). Once the State has proved the elements of first degree murder beyond a reasonable doubt, the defendant bears the burden of proving this mitigating factor by a preponderance of the evidence. 720 ILCS 5/9-2(c) (West 2024); *Flemming*, 2015 IL App (1st) 111925-B, ¶ 55.

¶ 81    Thus, for the prejudice prong in this case, we must assess whether there is a reasonable probability that—had trial counsel elicited Washington's testimony consistent with his affidavit—the trial court would have either acquitted defendant *or* found him guilty of only second degree murder. Keeping in mind that we take the averments as true and cannot engage in any credibility determinations at this stage (see *Domagala*, 2013 IL 113688, ¶ 35) we find defendant has met this threshold, warranting a third-stage hearing.

¶ 82    We find it significant that Washington's testimony would directly conflict with that of the State's primary witness, Glenda Harris, as to whether Heath was a shooter. Importantly, Washington claims to have been in the same SUV with Harris and Heath in the moments leading up to the shooting, meaning he had a close vantage point similar to that of Harris.

¶ 83    Washington's affidavit indicates he would testify that Heath was seeking out "some guys" he believed were involved in a prior shooting.[2] According to Washington, Heath pointed out a car and "said that's them," pulled out a gun and "started shooting out of the window."

¶ 84    Washington's testimony would force the finder of fact to decide whether it found him or Harris' account more credible on the crucial issue of whether Heath was a shooter. We cannot presume what the factfinder would decide upon hearing Washington's testimony. We also note that, although defendant elected not to testify at the 2006 trial, it is impossible to know whether he would have made the same decision, had Washington been available.

¶ 85    The State urges that, notwithstanding that any conflicting testimony, Washington's testimony would have no impact on the outcome because the physical evidence was "devastating" to a claim of self-defense.

---

[2] We note that this aspect of Washington's affidavit is actually consistent with Harris' trial testimony that Heath's friend Duke had been recently shot, and that as Heath was driving, he saw "some guys" that "he said he wanted to talk to."

¶ 86       We disagree. We recognize that casings were recovered from the east side of Homan, but that no shell casings were found in the SUV. Nonetheless, we are given pause by the fact that the physical evidence indicated not one, but multiple shooters. Indeed, the trial court remarked that there "were probably 3 shooters." Although there was no dispute that defendant fired shots from a .40-caliber weapon, police also recovered eight 9-millimeter Luger caliber cartridge cases, as well as four .22 caliber "long rifle" cartridge cases. The trial evidence did not identify the persons who fired the .9 millimeter and .22 caliber casings. Certainly, had all of the recovered bullets and casings been tied to defendant's weapon, it would be much more difficult for him to convince a factfinder that he believed he was acting in self-defense. But here, the evidence of two other shooters makes a claim of self-defense more plausible.

¶ 87       The State also suggests that a claim of self-defense based on Washington's proffered testimony is incompatible with defendant's custodial statements. We acknowledge that at various points in his custodial statements, defendant said he did not see Heath shooting at him, and that defendant did not know whether the shooting was directed at him. Defendant also denied he was shooting at anyone in particular. Nevertheless, that is not necessarily inconsistent with Washington's proffered testimony that Heath initiated the shooting. Certainly, it is physically possible that Heath was the initial shooter, even if defendant did not see Heath with a gun. We keep in mind that Washington was in the SUV with Heath, whereas defendant was outside the vehicle. Although a factfinder certainly *could* determine that Washington's account was undermined by defendant's recorded statements, it is not our role to make such credibility assessments at this stage.

¶ 88       Moreover, we again note that, had trial counsel investigated and called Washington to offer his account, perhaps defendant would have elected to testify; had he done so, he would have an

opportunity to explain inconsistencies in his recorded statement. Of course, we cannot say that a factfinder would necessarily credit Washington's testimony. But all that is required for prejudice is a reasonable probability of a different result.

¶ 89      In short, we find that trial counsel was ineffective in failing to investigate Washington as a potential witness, and there is a reasonable probability that the result of the proceeding would have been different had Washington testified consistent with his affidavit. Thus, we find defendant made a substantial showing of his claim of ineffective assistance, which entitles him to a third-stage evidentiary hearing.

¶ 90      We recognize that this conclusion might appear to be inconsistent with our decision on direct appeal, wherein we rejected defendant's claims that the evidence was insufficient to find him guilty of first degree murder, or that his conviction should be reduced to second degree murder. *Rogers*, 2016 IL App (1st) 112816-U. In that order, we agreed with the trial court that the evidence did not show that defendant acted under "a reasonable or unreasonable belief in the need for self-defense." *Id*., ¶ 42. We found that defendant's explanation for his presence was "improbable" and the fact that he was armed and wearing a vest "point[ed] to premeditation." *Id*. We also noted "his flight from police" and inconsistences in his recorded custodial statements. *Id*.

¶ 91      Yet, our inquiry on direct appeal was very different from that currently at issue. Our prior order determined that, viewing the evidence in the light most favorable to the prosecution, the evidence (which did not include Washington's testimony) was sufficient for the factfinder to find defendant guilty of first degree murder, and to conclude that there was no mitigating factor to reduce the crime to second degree murder. See *People v. Thompson*, 354 Ill. App. 3d 579, 587 (2004). But in the instant appeal, the governing inquiry is whether, taking the contents of the

petition and supporting affidavits as true, defendant made a substantial showing of a constitutional violation. We believe that he has.

¶ 92 Thus, we reverse and remand for a third-stage evidentiary hearing with respect to defendant's claim of ineffective assistance of trial counsel in relation to Washington.

¶ 93 D. The Petition Did Not Include a Claim of Actual Innocence

¶ 94 Our analysis does end there, however, because defendant additionally argues that his petition made a substantial showing of a claim of actual innocence based on Washington's affidavit. That is, he posits that his petition presented an actual innocence claim, independent of his ineffective assistance of counsel claim. He proceeds to argue that the "circuit court did not acknowledge [his] actual innocence claim and made no ruling on it" when it dismissed his petition.

¶ 95 We disagree for a simple reason: we find that the petition did not allege an actual innocence claim. Thus, the trial court cannot be faulted for failing to address it.

¶ 96 Our supreme court has held that a postconviction petition may include a " 'freestanding' claim of actual innocence as a matter of state law under the due process clause of the Illinois Constitution of 1970." *People v. Prante*, 2023 IL 127241, ¶ 73 (citing *People v. Washington*, 171 Ill. 2d 475 (1996). A free standing claim is "one in which newly discovered evidence is not being used to supplement an assertion of constitutional violation with respect to the petitioner's trial." *Id*. (quoting *Washington*, 171 Ill. 2d at 479-80). "To establish a claim of actual innocence, the supporting evidence must be (1) newly discovered, (2) material and not cumulative, and (3) of such conclusive character that it would probably change the result on retrial." *People v. Robinson*, 2020 IL 123849, ¶ 47.

¶ 97 A defendant may "use the same evidence to plead both a 'free-standing' claim of actual innocence and a claim of constitutional trial error." *People v. Flournoy* 2024 IL 129353, ¶ 68.

However, "in the end, if the evidence establishes a claim of constitutional trial error, it will not establish a 'free-standing' claim of actual innocence." *Id.*

¶ 98    In suggesting he set forth a claim of actual innocence, defendant relies on paragraph 7 of the *pro se* petition. That paragraph did not refer to "actual innocence." Rather, it stated in its entirety: "Petitioner now has newly discovered evidence which contradicts court[']s theory of a plan. Testimony of witness Frederick Washington could have changed outcome of trial. See exhibit (a) Affidavit of Frederick Washington."

¶ 99    Without more, we cannot say that this paragraph was an attempt to plead a separate, freestanding claim of actual innocence. Although paragraph 7 contained the phrase "newly discovered evidence," we do not find this phrase necessarily signaled a new actual innocence claim, independent of the ineffective assistance of counsel claim. Indeed, it appears just as likely that paragraph 7 was meant be to read in conjunction with the preceding paragraph's allegation that trial counsel failed to investigate Washington as a potential witness.

¶ 100    As we determine that the petition did not even contain an actual innocence claim, we certainly cannot conclude that the trial court erred in failing to find that defendant made a "substantial showing" of such a claim. Thus, we must reject this particular claim of error.

¶ 101    E. Postconviction Counsel Did Not Provide Unreasonable Assistance

¶ 102    This brings us to defendant's alternative argument that we should remand for new second-stage proceedings because his postconviction counsel provided unreasonable assistance, with respect to both the ineffective assistance of counsel claim and his purported claim of actual innocence.

¶ 103    Regarding the ineffective assistance of counsel claim related to Washington's affidavit, defendant claims his postconviction counsel "misunderstood Illinois law on forfeiture" and failed

to adequately respond to the State's forfeiture argument. However, this contention is moot, as we have determined *supra* that forfeiture did not apply and that defendant established he is entitled to a third-stage hearing on that ineffective assistance of counsel claim. That is, we need not analyze postconviction counsel's performance on that particular claim.[3]

¶ 104     This brings us to defendant's assertion that postconviction counsel was unreasonable with respect to an actual innocence claim. Specifically, defendant claims that his postconviction counsel provided unreasonable assistance by "fail[ing] to develop" or argue his "two sentence actual innocence claim" in paragraph 7 of the petition. Defendant suggests that postconviction counsel unreasonably failed to file an amended petition with such a claim, pointing out postconviction counsel never argued that he raised "two distinct claims" of ineffective assistance and actual innocence.

¶ 105     On the record before us, we cannot say that postconviction counsel provided unreasonable assistance in failing to amend to add an actual innocence claim, since (as noted above) the *pro se* petition did not state such a claim to begin with. However, we emphasize that we have independently concluded that remand is warranted for a third-stage evidentiary hearing on the petition's claim of ineffective assistance of trial counsel with respect to Washington. On remand, postconviction counsel should also be permitted to file an amended petition, in which defendant may properly state an actual innocence claim or other claims.

¶ 106     "The right to postconviction counsel is statutory, not constitutional. [Citations.]" *People v. Milam*, 2012 IL App (1st) 100832, ¶ 21. "[C]riminal defendants seeking relief in postconviction

---

[3]     Although not necessary to our conclusion, we observe that postconviction counsel could have amended the petition to have better articulated and supported the ineffective assistance claim. For example, postconviction counsel could have made more explicit the allegations in the petition and supporting affidavits that Washington was willing to testify at the time of defendant's trial as to his knowledge of the shooting, had he been contacted by defendant's counsel. In any event, we have determined that the pro se petition and supporting affidavits were sufficient to warrant a third-stage evidentiary hearing on the ineffective assistance claim.

proceedings have no constitutional right to counsel, effective or otherwise." *People v. Custer*, 2019 IL 123339, ¶ 30. "[P]etitioners are only entitled to the level of assistance provided for by the [Act]." *People v. Suarez*, 224 Ill. 2d 37, 42 (2007). "The required quantum of assistance has been judicially deemed to be a 'reasonable level,' " which is "significantly lower" than the constitutional right to counsel. *Custer,* 2019 IL 123339, ¶ 30.

¶ 107   "To assure the reasonable assistance required by the Act, Supreme Court Rule 651(c) imposes specific duties on postconviction counsel." *People v. Perkins*, 229 Ill. 2d 34, 43 (2007); Ill. S. Ct. R. 651(c) (eff. July 1, 2017). Postconviction counsel must "(1) consult with the defendant to ascertain his contentions of constitutional deprivations; (2) examine the record of the trial proceedings; and (3) make any amendments to the *pro se* petition necessary to adequately present the defendant's contentions." *Milam*, 2012 IL App (1st) 100832, ¶ 21;  Ill. S. Ct. R. 651(c) (eff. July 1, 2017).

¶ 108   The "primary purpose" of the Rule "is to ensure that counsel shapes the petitioner's claims into proper legal form and presents those claims to the court." *Kuehner*, 2015 IL 117695, ¶ 20 (quoting *Perkins*, 229 Ill. 2d at 43-44). However, "post-conviction counsel is only required to investigate and properly present the *petitioner's* claims." (Emphasis in original). *People v. Pendleton*, 223 Ill. 2d 458, 475 (2006) (quoting *People v. Davis*, 156 Ill. 2d 149, 164 (1993)). Accordingly, "[u]nder Rule 651(c) there is no requirement that postconviction counsel must amend a defendant's *pro se* petition or scour the record to uncover claims that were not raised by the defendant. [Citations.]" *Milam,* 2012 IL App (1st) 100832, ¶ 33 (quoting *Johnson*, 154 Ill. 2d at 237-38). While postconviction counsel "may raise additional issues if he or she so chooses, there is no obligation to do so." *Pendleton*, 223 Ill. 2d at 476.

¶ 109   The filing of a Rule 651(c) certificate gives rise to a rebuttable presumption that counsel provided reasonable assistance. *People v. Profit*, 2012 IL App (1st) 101307, ¶ 19. If postconviction counsel has filed a certificate, "[i]t is defendant's burden to overcome this presumption by demonstrating his attorney's failure to substantially comply with the duties mandated by Rule 651(c). [Citation.]" *Id.*

¶ 110      Here, postconviction counsel filed a Rule 651(c) certificate, giving rise to a rebuttable presumption of reasonable assistance. See *People v. Agee*, 2023 IL 128413, ¶ 43. We do not find that defendant has rebutted that presumption.

¶ 111      Defendant suggests that postconviction counsel failed to develop his petition's actual innocence claim. However, as discussed *supra*, we do not find that the *pro se* petition actually contained an actual innocence claim. Although postconviction counsel must "shape" a *pro se* petition's claims "into appropriate legal form," *Agee*, 2023 IL 128413, ¶ 44, postconviction counsel is not under a duty to add new claims. See *King,* 2023 IL App (1st) 220916, ¶ 49 (citing *Pendleton*, 223 Ill. 2d at 475-76). As the *pro se* petition did not contain an actual innocence claim, postconviction counsel cannot be faulted for failing to amend the petition or to otherwise argue such a claim. Given (1) the presumption of reasonable assistance created by the Rule 651(c) certificate and (2) the lack of any duty to add a new claim, we cannot find that postconviction counsel rendered unreasonable assistance by failing to add a claim of actual innocence.

¶ 112      At this point, we wish to emphasize that—given our prior conclusion that defendant is entitled to a third-stage evidentiary hearing—postconviction counsel will have further opportunity to amend the petition to add new claims. Our precedent does not indicate any reason why a defendant's postconviction counsel cannot amend a petition to add new claims on remand, where (as here) this court reverses the second-stage dismissal of a separate claim. See, e.g., *People v.*

*Overton*, 2023 IL App (4th) 230110, ¶ 69 (remanding for third-stage hearing and specifying that defendant may filed an amended petition to include additional claim); *People v. Johnson*, 2019 IL App (1st) 153204, ¶ 53 (finding defendant was entitled to a third-stage hearing on ineffective assistance claim and specifying that, on remand, defendant could amend petition to add a different claim). Indeed, insofar as the very same evidence (Washington's testimony) would be at issue in both the ineffective assistance claims and the actual innocence claim, judicial economy would be served by addressing both claims in the same proceeding. Further, the State would not be surprised or prejudiced by the addition of a new actual innocence claim based on Washington's testimony.

¶ 113        We also point out that, on remand, postconviction counsel could potentially add other claims in an amended petition derived from the *pro se* petition. For example, although not discussed in the briefs, the *pro se* petition attempted to state a claim that the State did not prove his guilt beyond a reasonable doubt because, *inter alia*, the autopsy findings and physical evidence did not show that Heath was killed by a bullet or bullets fired by defendant. Notably, the trial record shows that, while the State proffered evidence that a bullet fired by defendant was recovered from Heath's body, it did not offer specific testimony that this bullet inflicted a fatal wound, or that any particular shot fired by defendant was fatal.[4] Thus, it appears at least plausible that postconviction counsel might find reason to amend a petition with a related ineffective assistance of counsel claim. Of course, in the event postconviction counsel amends the petition, to add new claims, the State should be afforded a fair opportunity to dispute such claims, through a motion to dismiss or otherwise.

---

[4] The State presented a stipulation that the medical examiner would testify that Heath suffered eight gunshot wounds and that the cause of death was "multiple gunshot wounds." The medical examiner did not indicate which of the eight wounds was fatal. The stipulation reflected that portions of three bullets were recovered from Heath's body, one from the scalp and two from his left thigh. Forensic chemist Peter Brennan testified that the Illinois State Police determined that one of the three bullets from Heath's body matched defendant's gun, but Brennan did not specify whether that bullet was recovered from the scalp or from the left thigh.

¶ 114     We do not purport to tell postconviction counsel how to litigate this case on remand. Postconviction counsel should continue to exercise his or her independent judgment in consultation with defendant. However, we simply wish to emphasize that proceedings on remand should not necessarily be limited to a third-stage hearing on the ineffective assistance claim premised on the failure to investigate Washington.

¶ 115                           III. CONCLUSION

¶ 116     In summary, we reverse the second-stage dismissal of defendant's petition, as we find that defendant made a substantial showing that he received ineffective assistance of trial counsel for failing to investigate Washington as a potential witness. However, we do not find that the *pro se* petition set forth a claim of actual innocence, or that postconviction counsel rendered unreasonable assistance by failing to argue such a claim.

¶ 117     We thus remand for further proceedings, including a third-stage hearing on the ineffective assistance claim related to Washington. The trial court is instructed to permit postconviction counsel to amend the petition, consistent with this order.

¶ 118     Reversed and remanded with directions.

¶ 119     JUSTICE GAMRATH, dissenting:

¶ 120     Respectfully, I dissent. Rogers forfeited the issue by not raising it at the *Krankel* hearing and is not entitled to a third-stage postconviction hearing. See *People v. English*, 2013 IL 112890, ¶ 22 (issues that could have been raised on direct appeal but were not, are forfeited and may not be raised in a post-conviction proceeding).

¶ 121     On appeal, Rogers argues his counsel was ineffective by failing to investigate a potential witness, Washington. This is the very same issue Rogers raised in his amended motion for a new trial in 2011, where he complained his attorneys were ineffective for the alleged failure to

investigate four witnesses, Shimeka Rogers, Ivery, Montanez, and Delk. This resulted in a *Krankel* evidentiary hearing in which Rogers's allegations were squarely rebutted by counsel who said they did investigate and speak with those witnesses, contrary to Rogers's claims.

¶ 122    On direct appeal, we held the trial court conducted a proper *Krankel* hearing and affirmed its finding that counsel was not ineffective. Indeed, the trial court declared: "*** I observed these attorneys' conduct during the course of the trial. *** At no time did I find the conduct of these attorneys ineffective. At no time did I find anything that they did to be improper or unusual. They conducted themselves properly at all times, and zealously advocated on behalf of the Defendant in this case, and therefore, I find your motion to be spurious and I am denying your motion for ineffective assistance of counsel." We also observed how Rogers raised 21 claims of ineffective assistance of counsel in his motion, with the trial court thoroughly inquiring into his claims.

¶ 123    The *Krankel* procedure utilized by the trial court fully addressed Rogers's post-trial claims of ineffective assistance of counsel by engaging with Rogers and his counsel about the substance of his claims. The court gave them an opportunity to explain the facts and circumstances surrounding the allegations and any other concerns Rogers would have known of at the time. This includes his current complaint over counsel's alleged failure to investigate Washington.

¶ 124    It is evident from Rogers's postconviction petition that he knew about Washington when he filed his initial posttrial motion. According to his petition, he told his counsel that Washington was a passenger in the truck, yet they never investigated or called him at trial as a witness. This is the same scenario he alleged with witnesses Shimeka Rogers, Ivery, Montanez, and Delk.

¶ 125    While I agree with the majority that a *pro se* defendant does not forfeit a claim merely by not raising it at a *Krankel* inquiry, here Rogers raised the very subject matter of counsel's purported ineffectiveness based on the failure to investigate witnesses. It is suspect that he named four in his posttrial motion and neglected to mention a fifth. We should not excuse his failure when he had every opportunity to raise the issue at the *Krankel* inquiry and in his direct appeal.

¶ 126    Rogers's having Washington's affidavit now means nothing. "[A] pro se defendant is not required to do any more than bring his or her claim to the trial court's attention." *People v. Moore*, 207 Ill. 2d 68, 79 (2009). All Rogers had to do was allege his counsel failed to investigate Washington. Rogers did not need to explain what Washington knew, witnessed, or would have said at trial to raise this claim in his posttrial motion and on direct appeal. Further, while I understand the majority's concern over young adults not understanding the importance of a *Krankel* hearing, Rogers was either 28 or 29 when he filed his posttrial motion, and was not of the immature, vulnerable mindset of a juvenile or emerging adult.

¶ 127    *People v. Wanke*, 2022 IL App (2d) 210136-U, and *People v. Lynon*, 2025 IL App (1st) 231422-U, are directly on point and provide a thoughtful analysis as to why forfeiture should apply here. Conversely, *People v. McGee*, 2021 IL App (2d) 190040, provides no detailed analysis of the forfeiture issue, and I submit is distinguishable. In *McGee*, the defendant raised a wholly new claim in his postconviction petition that was neither contemplated nor known at the time of the *Krankel* hearing. Here, as in *Wanke* and *Lynon*, Rogers had all the facts and knowledge available to him at the time he filed his posttrial motion. The trial court also conducted a detailed and careful inquiry into Rogers's ineffective assistance of counsel claim in accordance with *Krankel*, giving him a chance to flesh out the basis of his posttrial motion

and raise any issue related to Washington. Because we are faced precisely with the same issues presented in *Wanke* and *Lynon*, the outcome should be the same. We should affirm based on forfeiture.  Accordingly, I dissent.